559 So.2d 557 (1990)
FRIES CORRECTIONAL EQUIPMENT, INC.
v.
CON-TECH, INC.
E.S.S., INC.
v.
CON-TECH, INC., and Roy N. Strickland.
88-68, 88-93.
Supreme Court of Alabama.
March 2, 1990.
*558 Dexter C. Hobbs and Truman M. Hobbs, Jr. of Copeland, Franco, Screws & Gill, Montgomery, and Steve A. Baccus of Almon, McAlister, Ashe, Baccus & Tanner, Tuscumbia, for appellant Fries Correctional Equip., Inc.
John D. Clement, Jr., Tuscumbia, for appellant E.S.S., Inc.
Joana S. Ellis of Ball, Ball, Matthews & Novak, Montgomery, and William M. Bouldin of Guin, Bouldin & Alexander, Russellville, for appellees Con-Tech, Inc. and Roy N. Strickland.
ALMON, Justice.
These appeals are from the denial of one defendant's motion to set aside a default judgment and, as to another defendant, from the default judgment, the denial of a motion for relief from that judgment, and a holding that that defendant existed as a corporation by estoppel. The default judgment was entered in an action alleging breach of contract and intentional interference with contractual relations and claiming money due on an open account. The judgment awarded $1,022,325.50 against Fries Correctional Equipment, Inc. ("Fries"), and $1,000,000.00 against E.S.S., Inc. Neither defendant had filed an answer within 30 days of being served with the summons and the complaint. Fries filed a Rule 55(c), Ala.R.Civ.P., motion to set aside the default judgment eight days after the court entered the judgment. E.S.S. filed a Rule 60(b)(4), Ala.R.Civ.P., motion for relief from judgment almost four months after entry of the judgment. Both parties argue that the court abused its discretion in denying their motions, and E.S.S. also argues that the trial court erred in entering the judgment against it and in holding that it was a corporation by estoppel.
Con-Tech, Inc., and its sole stockholder, Roy N. Strickland, brought this action against Fries, E.S.S., and J. Collier Sparks.[1] Sparks was employed by Con-Tech until late February 1988, and he began working for Fries in March, almost immediately after he quit working for Con-Tech. Sparks's contract of employment with Con-Tech had included a covenant not to compete. Fries was aware of the covenant not to compete, but hired Sparks to complete two jobs that Fries had subcontracted to Con-Tech. Evidence was presented to the trial court tending to show that Con-Tech was not completing the work on time or to specifications, and that Sparks was uniquely qualified to complete the work. Sparks and two officers of Fries took steps to form an Alabama corporation called "E.S.S., Inc.," but were unable to do so because a corporation by that name already existed. Nevertheless, they conducted business under that name and hired the remainder of Con-Tech's employees.
Con-Tech and Strickland filed their complaint on April 19, 1988, alleging that Sparks had breached his contract, including the covenant not to compete; that Fries had intentionally interfered with Sparks's contract of employment with Con-Tech; that E.S.S. was created to use the services of Sparks in competing with Con-Tech, to hire Con-Tech's employees and thereby destroy its ability to function, and to interfere with Con-Tech's contractual relations with Sparks and others; that Con-Tech was not in default on its contracts with Fries but was owed money for its services; and that Fries owed Con-Tech $22,325.50 on open account.
From the above general statement of the controversy, the issues, and the particular claims, we proceed to a detailed narrative of the facts and proceedings leading to this appeal.
Con-Tech, Strickland, and Sparks had entered into an agreement on January 24, *559 1986, the following provisions of which are pertinent to the claims at issue:
"Whereas; the parties to this contract are interested in engaging in a business for the sale and installation of electronic systems; and
"Whereas; Roy N. Strickland has set up and supplied the necessary capital for a corporation known as Con-Tech, Inc.; and
"Whereas, J. Collier Sparks has been previously engaged in the electronic business.
"Now, Therefore, it is hereby agreed between Roy N. Strickland, Con-Tech, Inc., an Alabama corporation, and J. Collier Sparks as follows:
"1. Con-Tech hereby employs J. Collier Sparks as the general manager of said corporation, and J. Collier Sparks hereby accepts such employment and enters into the employment of the corporation as of the 1st. day of February, 1986....
"2. In consideration of such services, Con-Tech agrees to pay J. Collier Sparks compensation at the rate of Fifteen Hundred Dollars ($1,500.00) per month and his reasonable and necessary travel expenses incurred in the company's business while away from [the] Muscle Shoals area. In further consideration for his services to be supplied, J. Collier Sparks shall have the right at the end of the initial term of this contract to a bonus equal to Forty Nine per cent (49%) of the net profits of the corporation after taxes.
"3. The term of this agreement shall be for a period of one year from the 1st. day of February, 1986. At the expiration date of this initial term, this agreement shall be considered renewed for regular periods of one year, provided that neither party submits a notice of termination.
"....
"7. Employee shall not, during the term of this agreement or thereafter, impart any information relative to the business or affair[s] of the corporation to anyone except those employees of this corporation, who are entitled to receive such information. J. Collier Sparks shall not during the term of this contract, nor for a 1 year period immediately following the termination of this contract, if the corporation remains active in the business, compete with said corporation within a radius of 500 miles."
After Sparks started working for Con-Tech, Con-Tech and Fries entered into two contracts whereby Con-Tech agreed to install electronic security systems in two prisons in Florida. Fries had contracted to manufacture and install the steel doors, gratings, and windows in the prisons, and Con-Tech's electronics included the controls to open and close the doors. The evidence tended to show that, in the fall of 1987, Fries received complaints from the general contractors on the two sites that doors were not closing properly, that Con-Tech was behind schedule, and that there were other problems with Con-Tech's performance. Con-Tech disputed much of this evidence, but we cite it for its overall relevance to Fries's allegations of a meritorious defense and excessiveness of the judgment.
There was also substantial evidence that Con-Tech was having financial difficulty throughout its existence, and particularly in late 1987 and early 1988. Two possible causes of those difficulties were explored in the hearing conducted by the trial court on the motion to set aside the default judgment. One line of testimony regarded Strickland's contributions of capital to the corporation. The former Con-Tech employees who testified gave evidence that Strickland did not provide sufficient capital to meet the corporation's needs or to allow it to perform its contracts adequately, and that he withdrew money from the corporation on occasion.
The other line of testimony showed that Sparks withdrew money as bonuses for himself. There was some dispute as to whether those bonuses were authorized under provision 2 of the contract or were unauthorized, but Sparks apparently did not attempt to conceal his withdrawals. A fair reading of the evidence would support a conclusion that a dispute erupted between *560 Strickland and Sparks in February 1988, at least principally over those bonuses, and that that dispute led to Sparks's departure from Con-Tech at the end of that month. On Friday, February 26, Strickland called a meeting of all the employees present at Con-Tech, not including Sparks, who apparently had already quit. Strickland told the employees that he wanted them to know his side of the dispute with Sparks and explained some facts about Sparks's withdrawal of bonuses. Several of those employees testified at the hearing on the Rule 55(c) motion that, after that meeting, they did not know whether they would have jobs or whether Con-Tech would be in operation the following Monday.
Beginning in the first week or two of March, Sparks made efforts to complete the electronics work on the two Florida prisons. He worked first from his house and later from a premises leased in the name "E.S.S., Inc." He hired virtually all of Con-Tech's employees. They received paychecks from Fries for the first two weeks of March and apparently later received paychecks from "E.S.S., Inc." A bank account was established in that name with money deposited by Fries.
When Con-Tech and Strickland filed their complaint on April 18, a summons and a copy of the complaint were sent to Sparks, E.S.S., Inc., and Fries by certified mail. On April 23, Sparks signed the receipts for the mail addressed to him and that addressed to E.S.S., Inc. The mail sent to Fries was marked "refused" on April 25 and was returned to the circuit clerk's office. The clerk received the returned mail on May 2 and reissued the summons and complaint to Fries by ordinary mail, in accordance with Rule 4(e), Ala.R.Civ.P., on May 6. That envelope was stamped "Return to Sender" with a stamp that the postmaster later denied as being in use by his post office. Handwritten in red ink on the envelope were the words "ReturnedNot at this address," cross marks through Fries's address, and an arrow pointing at the clerk's office's return address.
Sparks filed an answer on May 23 including the following averment: "Defendant denies that E.S.S. is a Corporation or partnership as alleged in paragraph 5 of the Complaint characterized as `Identification of Parties.'" The answer was clearly filed by Sparks alone: "Comes now the defendant, J. Collier Sparks, and for answer to the complaint...."
Con-Tech and Strickland filed a motion for default judgment against Fries on June 8, and a motion for default judgment against E.S.S. on June 10. The clerk entered default against both defendants on June 10. Also on that date, the court set a hearing on damages for the following Monday, June 13. After that hearing, the court entered judgment on June 15.
On June 23, Fries filed its motion to set aside the default judgment, attaching the affidavit of its vice-president, Kevin J. King. The court held a hearing on that motion on August 4, took further evidence and heard arguments on September 6, and denied the motion on September 12. In its order of September 12, the court made the judgment against Fries and E.S.S. final, pursuant to Rule 54(b), Ala.R.Civ.P. On October 4, Fries filed a "motion to reconsider [its] motion to set aside the default judgment." On October 11, E.S.S., Inc., made its first appearance, filing a Rule 60(b)(4) motion alleging that the judgment against E.S.S. was void. On October 13, the court entered separate orders denying both of those motions. Fries and E.S.S. filed timely notices of appeal.
In deciding whether to set aside a default judgment, a court balances two competing interests: (1) the need to promote judicial economy and (2) the need to preserve a defendant's right to defend on the merits. Kirtland v. Fort Morgan Authority Sewer Service, Inc., 524 So.2d 600 (Ala.1988). Because the interest in preserving a litigant's right to a trial on the merits is paramount, this Court has construed Rule 55(c) as contemplating a liberal exercise of a trial court's discretion in favor of setting aside default judgments. Id. Additionally, it is implicit in the Alabama Rules of Civil Procedure that default judgments *561 are not favored. Johnson v. Moore, 514 So.2d 1343 (Ala.1987).
In Kirtland, supra, this Court set out a three-factor analysis to be used by trial courts in determining when to grant Rule 55(c) motions. The three factors to be considered are: (1) whether the defendant has a meritorious defense; (2) whether the plaintiff will be unfairly prejudiced if the default judgment is set aside; and (3) whether the default judgment was a result of the defendant's own culpable conduct. Id., at 605.
In establishing a meritorious defense, the movant's burden is to satisfy the trial court only that he is prepared to present a plausible defense, not that he would necessarily prevail at a trial on the merits. Ex parte Illinois Central Gulf R.R., 514 So.2d 1283, 1288 (Ala.1987). The Court further explained this standard in Kirtland, supra, at 606:
"The defense proffered by the defaulting party must be of such merit as to induce the trial court reasonably to infer that allowing the defense to be litigated could foreseeably alter the outcome of the case. To be more precise, a defaulting party has satisfactorily made a showing of a meritorious defense when allegations in an answer or in a motion to set aside the default judgment and its supporting affidavits, if proven at trial, would constitute a complete defense to the action, or when sufficient evidence has been adduced either by way of affidavit or some other means to warrant submission of the case to the jury."
(Citations omitted.)
In denying Fries's motion to set aside the default judgment, the trial court issued a detailed order, holding, inter alia, that Fries had failed to present a meritorious defense. That holding was in error. The claims against Fries were a claim of tortious interference with Con-Tech's contract with Sparks, a claim for an amount due on open account, and a claim that could be described as seeking damages either for work and labor done or for breach of contract. The $22,325.50 portion of the judgment against Fries was the exact amount claimed under the claim alleging an open account. The evidence generally showing disputes over contract rights and performances would support a jury verdict that failed to award damages to Con-Tech on this count, if only due to offsetting amounts due from Con-Tech to Fries for, e.g., liquidated damages to the prison owners or the general contractors.
More importantly, the $1,000,000 portion of the judgment against Fries is the exact amount sought under the count for tortious interference with contractual relations.[2] The evidence at the hearing showed a substantial jury question regarding that count. There was evidence from which a jury could find that Sparks's departure from Con-Tech was due to a dispute between him and Strickland, not to any wrongful enticement by Fries. The fact that Fries knew of Sparks's covenant not to compete is not dispositive, for two reasons. First, it could be that Strickland and Con-Tech breached the contract first (Sparks has claimed this in a counterclaim), thereby absolving Sparks from any further duties under the contract. Second, Fries's vice-president, Kevin King, testified that he had doubts as to whether the covenant was enforceable.[3] Even if the covenant was enforceable against Sparks, King's testimony and the other evidence might defeat or mitigate a claim against Fries for intentional interference with Con-Tech's contract with Sparks.
Con-Tech does not claim damages against Fries for intentional interference relating to the hiring away of Con-Tech's other employees, but claims such damages *562 only against E.S.S. To the extent that those actions could be deemed to support the claim against Fries, however, the claim is nevertheless subject to meritorious defenses, principally that of justification.[4] Fries was contractually obligated to perform the electronics work that it had subcontracted to Con-Tech. There was evidence from which a jury could find that Con-Tech was in breach of its subcontract, or at least that Fries reasonably could have believed that Con-Tech would not be able to complete its performance satisfactorily. Fries took the position that it hired Sparks and the other Con-Tech employees strictly to complete satisfactory performance and thereby prevent the accumulation of liquidated damages under its contracts with the general contractors of the prisons. Those liquidated damages apparently would have been assessed against Con-Tech under its contract with Fries, so any diminution of damages would have inured to Con-Tech's benefit also.
Con-Tech presented evidence to the contrary, including evidence that it offered to complete performance through other employees after Sparks and the other employees left, but this evidence shows only that a jury question existed. The other employees had not entered into covenants not to compete with Con-Tech. Some of them gave testimony that Strickland's behavior on February 26 led them to believe that Con-Tech would not be in business the following week. In short, there was credible evidence that Fries would have been justified in concluding that Con-Tech's alleged failures to finish its work on time and to specifications would ripen into substantial breaches and that Fries's prudent course of action was to hire the employees whom Con-Tech apparently could no longer sustain and who, especially Sparks, knew the details of the electronics systems that were being installed.
Finally, the trial court's holding that Con-Tech was not in breach of its contract was not in accord with the Rule 55(c) standard that a meritorious defense exists if litigation "could foreseeably alter the outcome of the case." Kirtland, supra, at 606. As recounted above, there was evidence that Con-Tech had breached the contract by failing to perform its work satisfactorily. Therefore, the judgment against Fries is also subject to meritorious defenses to the extent that it is attributable to the claim for work and labor done.
The second element of the Kirtland test is whether the plaintiff will be unfairly prejudiced if the default judgment is set aside. Such prejudice must be substantial, and mere delay in the recovery on the claim is not sufficient prejudice to justify refusal to set a default judgment aside, although it might be grounds for imposing costs on the defaulting party. Kirtland, supra, at 606-07. Con-Tech and Strickland have shown no prejudice of the kind that would support a denial of a motion to set aside a default judgment.
The final element is the culpability of the defaulting party's conduct. In this instance, the trial court's finding that Fries intentionally avoided service is sustainable on the record. Sparks received the complaint two days before the complaint sent to Fries was marked "refused," and the court could reasonably have inferred that Sparks, who communicated with Fries frequently at that time, had forewarned the officers of Fries. Fries is located in Tipp City, Ohio, and the postmaster of that town testified that his office could have made a mistake, and otherwise gave evidence that Fries points to as negating the likelihood that it intentionally refused service. The court, however, held that Fries had not presented a reasonable explanation for the failure to accept the certified letter but, on the contrary, that Fries had intentionally flouted the judicial process.
Those conclusions do not support the refusal to set aside the default judgment against Fries, however, because the claims were so much in dispute, as explained above, and because of the size of the judgment. The evidence given at the hearing on damages was largely speculative, consisting primarily of worst-case scenarios as *563 to additional expenses that Con-Tech might incur in completing contracts and in potential warranty liability. Even those figures do not appear to support an award of $1,000,000 in damages. Thus, both liability and damages are open to substantial dispute. In such a circumstance, a defendant's avoidance of service might be grounds for imposition of costs or other sanctions, but should not be grounds for a refusal to set aside such a large default judgment.
For the foregoing reasons, the default judgment against Fries is due to be set aside, and the denial of the Rule 55(c) motion is due to be reversed.
We now turn to the issues regarding the judgment against E.S.S. The dispositive question is whether the trial court erred in holding that E.S.S. is a corporation by estoppel.
E.S.S. cites the rule that a corporation by estoppel arises only where the party asserting the estoppel has detrimentally relied on the agreements or conduct creating an appearance of corporate existence, citing Bukacek v. Pell City Farms, Inc., 286 Ala. 141, 237 So.2d 851, cert. denied, 401 U.S. 910, 91 S.Ct. 872, 27 L.Ed.2d 809 (1970); Ex parte Baker, 432 So.2d 1281 (Ala.1983); Mazer v. Jackson Ins. Agency, 340 So.2d 770 (Ala.1976); Cahaba Veneer, Inc. v. Vickery Auto Supply, 516 So.2d 670 (Ala. Civ.App.1987); Harris v. Stephens Wholesale Bldg. Supply Co., 54 Ala.App. 405, 309 So.2d 115 (Ala.Civ.App.1975). Thus, argues E.S.S., the trial court erred in holding that E.S.S. is a corporation by estoppel, because Con-Tech and Strickland had had no dealings with Sparks doing business in the name "E.S.S., Inc.," and so could not have relied on that alleged corporate existence.
Con-Tech and Strickland counter by arguing that the above-cited cases are distinguishable as involving contracts, whereas this case involves a tort claim. They cite 18 C.J.S. Corporations § 110(a) (1939) and 18A Am.Jur.2d Corporations § 269 (1985) for the proposition that "persons who hold themselves out as a corporation and do business as such and who commit a tort in the course of such business cannot set up lack of legal incorporation to escape liability therefor in an action brought against them as a corporation." None of the cases cited by those encyclopedias is instructive as to the issues before us. See Watwood v. Barber, 70 F.R.D. 1 (N.D.Ga.1975); Anderson v. Kennebec River Pulp & Paper Co., 433 A.2d 752 (Me.1981); Merriman v. Standard Grocery Co., 143 Ind. App. 654, 242 N.E.2d 128 (1968).
The circumstances of this case did not justify a default judgment against "E.S.S., Inc.," on the theory that some person or persons were estopped to deny that such a corporation existed for the sake of this claim of tortious interference with contractual relations. Sparks's answer denied that any such corporation existed. The complaint did not allege any theory of corporation by estoppel, and there was no amendment of the complaint to allege such a theory after Sparks filed his answer. The only possible grounds for the judgment against "E.S.S., Inc.," were the allegations of the complaint and the fact that Sparks had signed the certified mail receipt for the summons and complaint directed to "E.S.S., Inc." at an address that was different from his home address.
From the complaint and the receipt it was obvious that, if there was any such corporation, Sparks was its principal. Certainly, there was no indication of anyone else who would be entitled or required to file an appearance on behalf of "E.S.S., Inc." To require Sparks to file an appearance in the name "E.S.S., Inc.," would require him to contradict himself and virtually to admit that which he denied in his answer.[5] Therefore, the trial court should have treated his answer as an appearance on behalf of the named party and a denial of the existence of any such entity. No *564 notice of the motion for default judgment, of the entry of default, or of the setting of the hearing on damages[6] was served on Sparks, so there was no reason for him to contest further the claim against E.S.S., Inc. Under the circumstances, the trial court should have denied the motion for default judgment absent a further pleading raising the theory of corporation by estoppel and service of such a pleading on E.S.S., Inc. See Rule 5(a), Ala.R.Civ.P.
For the reasons stated, the default judgment against E.S.S., Inc., is reversed, the denial of Fries's Rule 55(c) motion is reversed, and the cause is remanded. Con-Tech and Strickland have filed a motion to supplement the record, but the matter they seek to add relates to an argument that need not be discussed in view of our resolution of the case. Therefore, the motion is denied as moot.
MOTION TO SUPPLEMENT RECORD DENIED.
88-68, REVERSED AND REMANDED. 88-93, REVERSED AND REMANDED.
HORNSBY, C.J., and ADAMS and STEAGALL, JJ., concur.
MADDOX, J., concurs in the result.
MADDOX, Justice (concurring in the result).
In Kirtland v. Fort Morgan Auth. Sewer Serv., 524 So.2d 600 (Ala.1988), and the earlier case of Ex parte Illinois Cent. Gulf R.R., 514 So.2d 1283 (Ala.1987), I expressed disagreement with this Court's departure from the old rule, which granted broad discretion to trial judges in determining when and under what circumstances to enter a default judgment. I did not get broad support for my position in those two cases, and I can think of no good reason to continue to express my own belief that the old rule should not have been changed.
In this special writing, in which I finally surrender and accept the majority rule, I do want to state, as a parting comment, that I continue to believe that the old rule conformed more with Rule 1 of the Alabama Rules of Civil Procedure than does the rule announced in Kirtland.[7]
The majority correctly points out that the rule announced in Kirtland is controlling; consequently, even though I would vest more discretion in the learned trial judge, the law unfortunately is to the contrary; therefore, I concur in the result.
NOTES
[1] The trial court made the judgment against Fries and E.S.S. final pursuant to Rule 54(b), Ala.R.Civ.P. Sparks had filed a timely answer, and as far as the record before us shows, the action is still pending against him.
[2] The third count against Fries sought a declaration that Con-Tech was not indebted to Fries on any theory of breach of contract and, further, asked that the court "establish the amount of damages owed" by Fries to Con-Tech "for services performed under said contract." It did not seek a specified amount of damages.

The court granted the affirmative relief of declaring that Con-Tech was not in breach of the contract.
[3] Such covenants are disfavored and are enforceable only in limited circumstances. See Ala.Code 1975, § 8-1-1 and annotations thereto.
[4] See Gross v. Lowder Realty Better Homes & Gardens, 494 So.2d 590 (Ala.1986).
[5] Perhaps Sparks could have filed a motion to quash service on E.S.S., Inc., but to uphold the default judgment on his failure to follow such a procedure would be to elevate form over substance, given that his answer made the same averment that would be necessary to support such a motion.
[6] On Friday, June 10, plaintiffs moved for default judgment, the clerk entered default, and the court set a hearing on damages for Monday, June 13, at 10 a.m. About 4:05 p.m. on Friday, some form of notification was apparently placed in a box at the courthouse that was assigned to Sparks's attorney. Although a party in default is not entitled to service, Rule 5(a), Ala.R.Civ.P., Sparks was entitled to such service because he had entered an appearance and had denied the corporate existence of E.S.S., Inc. Clearly, no service was made. Rule 5(b).
[7] The fact of this appeal and the added expense and time it has required is more proof that litigants should pay attention to court processes, and that trial judges should not be deprived of the authority to enter a default judgment when the facts warrant it.