The defendant, James C. Prescott, M.D., appeals from a $750,000 default judgment in favor of the plaintiffs, Lucia C. Baker[1] and her husband Herchel Baker. The issue is whether the circuit court abused its discretion in denying Dr. Prescott's Rule 55(c), *Page 879 
Ala.R.Civ.P., motion to set aside the default judgment.
In August 1990, the Bakers brought this medical malpractice action against Dr. Prescott and numerous other named and fictitiously named defendants. In their complaint, the Bakers alleged that Dr. Prescott and the other defendants had breached the standard of care in performing an intubation to anesthetize Lucia Baker before a surgical operation on her gallbladder. The Bakers alleged further that, as a proximate result of the defendants' malpractice, she fell into a coma for several weeks, was unable to walk for 10 months, and suffered permanent physical injuries; physical pain; and mental anguish, and that she and Herchel Baker incurred sundry medical expenses and lost wages. Along with the other named defendants, Dr. Prescott filed an answer, denying that he had negligently intubated Lucia Baker or that any of his actions caused her injuries.
After many continuances, nearly all of which were granted at the request of the plaintiffs, the circuit court held a status conference or hearing on October 15, 1992, at which it set a trial date of January 13, 1993. Until the status conference, Dr. Prescott had represented himself; however, he hired an attorney to represent him at that conference.
In November 1992, Dr. Prescott entered into a contract with Kron Medical, a physician procurement company, to provide surgical care at a hospital in Kodiak Island, Alaska. According to the affidavits of Dr. Prescott and Kathy Gresham, the director of the medical facility in Kodiak, the term of the contract was to extend from December 21, 1992, until January 22, 1993. In his later testimony at the hearing on his motion to set aside the default judgment, however, Dr. Prescott testified that when he entered into the contract, he thought that the term of the contract would end in December.
On December 15, 1992, Dr. Prescott moved for a continuance, stating as grounds that before he received notice of the January 13, 1993, trial date, he had made a commitment to provide surgical services in Kodiak and that because he was going to be the only physician at the Kodiak facility practicing obstetrics, gynecology, and surgery and because a replacement was unavailable, he would be unable to leave Kodiak and attend the trial in Alabama. Dr. Prescott left for Kodiak before the circuit court ruled on his motion.
On January 5, 1993, the circuit court denied Dr. Prescott's December 15, 1992, motion for a continuance. On January 12, 1993, the day before the scheduled trial date, Dr. Prescott's secretary mailed a letter to the circuit judge, requesting that he continue the trial because of Dr. Prescott's commitment in Kodiak. Treating this letter as a motion for a continuance, the circuit court denied it on January 13, 1993. On the case action summary sheet, the circuit court stated: "The court specifically finds that the defendant Dr. Prescott had sufficient notice of the trial setting."
Dr. Prescott did not appear for trial on January 13, 1993. A default judgment was entered against him, and, after a brief hearing at which the Bakers testified and presented other evidence regarding the events forming the basis of their claims, their injuries, and their claimed damages, the circuit court entered a default judgment against Dr. Prescott. On February 4, 1993, Dr. Prescott moved to set aside the default judgment, supported by his own affidavit and the affidavit of Kathy Gresham. On March 19, 1993, the circuit court held a hearing on Dr. Prescott's motion to set aside the default judgment. Dr. Prescott testified that a "certified registered nurse anesthetist" had performed the intubation, that he was not in the room with Mrs. Baker when the intubation was performed, that there were no anesthesiologists in the area of Thomasville, Alabama, where the surgery had been performed, and that in what he called the Thomasville medical community, it was accepted and standard practice to allow "certified registered nurse anesthetists" to administer anesthesia without the supervision of a physician.
A trial court has broad discretionary power to grant or deny a Rule 55(c) motion to set aside a default judgment, and its decision will not be reversed absent an abuse of discretion.Kirtland v. Fort Morgan *Page 880 Auth. Sewer Serv., Inc., 524 So.2d 600, 603
(Ala. 1988). In determining whether to grant or deny a motion to set aside a default judgment, however, the trial court should exercise its discretion with liberality and should balance the equities of the case with a strong inclination toward allowing the defendant to have his day in court. To guide trial courts in the exercise of their discretion, this Court has specified three factors the trial courts should consider: (1) Whether the defendant has a meritorious defense; (2) Whether the plaintiff will be prejudiced if the default judgment is set aside; and (3) Whether the default judgment was a result of the defendant's own culpable conduct. Kirtland, 524 So.2d at 605-08.
Dr. Prescott argues that he presented sufficient evidence to establish a meritorious defense to the claims alleged against him by the Bakers and that, although he was negligent in conducting his case, his actions did not constitute a knowing or intentional disregard or flouting of judicial authority. Citing Fries Correctional Equip., Inc. v. Con-Tech,Inc., 559 So.2d 557 (Ala. 1990), Dr. Prescott contends that because the judgment is so large and because, he says, the Bakers would not suffer substantial prejudice by the setting aside of the default judgment, the circuit court abused its discretion in denying his motion to set aside the default judgment.
The plaintiffs admit that "Dr. Prescott submitted evidence during the March 19, 1993, hearing which, if believed, might create a question of fact as to breach of the standard of care." Thus, they do not question in this appeal whether Dr. Prescott has presented a meritorious defense; they argue only the issues of substantial prejudice and culpability.
Prejudice must be substantial to justify the denial of a motion to set aside a default judgment; minimal prejudice, which may be remedied effectively by imposing costs on the defaulting party, is insufficient. Kirtland, 524 So.2d at 607. Dr. Prescott argues that the plaintiffs suffered no prejudice that could not be remedied by an order imposing on him costs occasioned by the delay and expense of conducting a trial of their claims.
The plaintiffs make several arguments in support of their contention that they will suffer substantial prejudice if the default judgment is set aside and they have to try their claims on the merits. First, they note that when Dr. Prescott moved to set aside the default judgment, he filed untimely responses to the Bakers' interrogatories and requests for production, and that in those responses Dr. Prescott listed four expert witnesses whose testimony he intended to present at trial if the default judgment were set aside by the circuit court. The plaintiffs argue that the additional expense and delay involved in deposing these witnesses, who would not have testified if Dr. Prescott had appeared for the January 13, 1993, trial date, constitute substantial prejudice. Any such prejudice is not substantial and could be remedied by imposing these additional costs on Dr. Prescott.
The plaintiffs also argue that during 1992 Dr. Prescott disposed of $1.6 million in assets in what they allege were fraudulent transfers, and they argue that the delay occasioned by a trial on the merits constitutes substantial prejudice because the statutory limitations period applicable to an action to set aside these allegedly fraudulent transfers may run before they obtain another judgment. We note, however, that the remedies afforded by the Alabama Uniform Fraudulent Transfer Act, § 8-9A-1 et seq., Ala. Code 1975, to which the statute of limitations of the Act applies, may be available even though a creditor's claim has not been reduced to judgment. § 8-9A-7, Ala. Code 1975 (providing creditor's remedies); § 8-9A-1(3) and (4), Ala. Code 1975 (defining "claim," in part, as a "right to payment, whether or notthe right is reduced to judgment" (emphasis added)). The transfers of assets by Dr. Prescott appear to be part of a property settlement in Dr. Prescott's 1992 divorce. Without expressing any opinion about whether these transfers were fraudulent, we conclude simply that the lack of a judgment against Dr. Prescott and any delay caused by setting aside the default judgment and conducting a trial on the merits to obtain another judgment would not substantially *Page 881 
prejudice the plaintiffs in any effort to avail themselves of the remedies afforded by the Fraudulent Transfer Act.
The plaintiffs also argue that two other actions remain pending against Dr. Prescott and that if the default judgment is set aside, they will be substantially prejudiced because, they say, these other judgment creditors would have priority. Even assuming that these other claimants obtain judgments against Dr. Prescott and that they do so before Mr. Baker and the estate of Mrs. Baker do so, we cannot say that such a consideration overcomes the strong public policy in favor of resolving legal issues on the merits, in light of the other circumstances of this case.
During the pendency of this appeal, Mrs. Baker has died. The parties have filed supplemental briefs concerning the legal effect on this appeal of Mrs. Baker's death. The parties have not briefed the question whether Mrs. Baker's death should be considered on appeal at all, coming as it did after the circuit court had denied the motion to set aside the default judgment. Ordinarily, only matters before the trial court are relevant to an appeal. However, the question of prejudice is, as a practical matter, affected by Mrs. Baker's death. For this reason, and because Dr. Prescott has not argued that her death is not pertinent to a review of the denial of the Rule 55(c) motion, we will address the arguments as to whether Mr. Baker and the estate of Mrs. Baker will be substantially prejudiced by a reversal of this default judgment.
In their supplemental brief, the plaintiffs contend that reversing this default judgment would substantially prejudice them because Mrs. Baker's testimony on many issues is lost, making it impossible, they say, to prosecute the negligence claim against Dr. Prescott. More specifically, the plaintiffs argue that Mrs. Baker's testimony is necessary to show her condition before the injury, her discussions with Dr. Prescott, her discussions with other physicians, and her condition after the injury.
Dr. Prescott responds by arguing that Mrs. Baker's testimony is adequately preserved by the transcript of her testimony at the hearing on damages. Dr. Prescott also responds by asking this Court to grant his motion to supplement the record with the transcript of Mrs. Baker's deposition. In sum, Dr. Prescott contends that Mrs. Baker's testimony has been adequately preserved by these two transcripts and that, therefore, the plaintiffs will suffer no substantial prejudice in the ability to prosecute their claims in her absence.
Any prejudice suffered by the plaintiffs is notsubstantial as defined in Kirtland. In the circumstances of this case, Mrs. Baker's testimony is not essential to the key liability issues of this case and, to the extent her testimony is essential, it has been adequately preserved.
According to the plaintiffs' own supplemental brief, Mrs. Baker's testimony is necessary principally to show her condition before and after the injury. The record, however, already contains a transcript of Mrs. Baker's detailed testimony concerning her injuries and suffering, given during the hearing on damages. With regard to whether Mrs. Baker's death may affect the plaintiffs' ability to establish the malpractice claim, any testimony from Mrs. Baker would not likely have been probative of any of the key liability issues in this case, e.g., whether Dr. Prescott owed a duty to supervise the intubation, whether Dr. Prescott breached the applicable standard of care, and, if so, whether Dr. Prescott's breach proximately caused the injuries. From the circumstances of the alleged malpractice, it does not appear that Mrs. Baker would have been competent to testify as to any of these issues. When the intubation was performed, Mrs. Baker was unconscious, and no one has even suggested that she would have been competent to testify about the standard of care or about Dr. Prescott's alleged breach of it. Anything she had to say would likely have been probative only of her injuries and suffering, which were considerable. Therefore, Mrs. Baker's testimony on the issues on which she was competent to testify, e.g., injuries and suffering, appears to be adequately preserved.
We conclude, therefore, that there is not a sufficient showing that the plaintiffs would be *Page 882 
substantially prejudiced if the default judgment were set aside to support the denial of Dr. Prescott's motion.
We turn now to the issue of the culpability of Dr. Prescott. "Conduct committed willfully or in bad faith constitutes culpable conduct for purposes of determining whether a default judgment should be set aside. Negligence by itself is insufficient." Kirtland, 524 So.2d at 607. The Court has defined "willful and bad faith conduct" in this context as "conduct characterized by incessant and flagrant disrespect for court rules, deliberate and knowing disregard for judicial authority, or intentional nonresponsiveness."Kirtland, 524 So.2d at 608. "[A] defaulting party's reasonable explanation for inaction and noncompliance may preclude a finding of culpability." Id. at 608. Although Dr. Prescott seeks to characterize his failure to appear for trial on January 13, 1993, as mere negligence, we conclude that evidence in the record supports a finding that he deliberately attempted to contravene or frustrate the circuit court's October 15, 1992, order setting the trial for January 13, 1993.
Even though the record contains evidence from which the circuit court could have inferred culpable conduct on the part of Dr. Prescott, we nevertheless hold that the court abused its discretion in denying his motion to set aside the default judgment. In Fries Correctional Equip., Inc. v. Con-Tech,Inc., supra, the Court reversed a $1,022,325.50 default judgment against one of the defendants, holding, interalia, that although the defendant had intentionally avoided service of process, the denial of its motion to set aside the default judgment was an abuse of discretion, given that the defendant had presented evidence of a meritorious defense and that there had been no showing of substantial prejudice to the plaintiff:
 "[B]oth liability and damages are open to substantial dispute. In such a circumstance, a defendant's avoidance of service might be grounds for imposition of costs or other sanctions, but should not be grounds for a refusal to set aside such a large default judgment."
559 So.2d at 563. Dr. Prescott presented what the plaintiffs admit is sufficient evidence to create a fact question as to a meritorious defense to the claims against him, and he has shown that the plaintiffs will not suffer substantial prejudice if the default judgment is set aside. Like that conduct inFries Correctional Equip., his culpable conduct is not sufficiently "willful and bad faith conduct," Kirtland,supra, to justify denying a motion to set aside such a large default judgment. Dr. Prescott had appeared and had participated in the earlier proceedings. He did not simply fail to appear, but attempted to obtain a continuance. Although his failure to appear in person or through counsel on the trial date was unjustified, it was not so culpable under the circumstances as to justify denying his timely and properly supported Rule 55(c) motion.
Based on the foregoing, we reverse the judgment and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and HOUSTON, KENNEDY and COOK, JJ., concur.
[1] Lucia C. Baker died during the pendency of this appeal. By order of the circuit court, Herchel Baker, as administrator of the estate of Lucia C. Baker, was substituted for Lucia C. Baker as a party.