672 So.2d 1 (1995)
Joseph ROONEY and Medicor, Inc.
v.
SOUTHERN DEPENDACARE, INC., and Jack Hilton.
IMAGING MANAGEMENT ASSOCIATES, INC., and Leonard Vernon
v.
SOUTHERN DEPENDACARE, INC., and Jack Hilton.
1940171, 1940180.
Supreme Court of Alabama.
August 25, 1995.
Rehearing Denied December 15, 1995.
Hobart A. McWhorter, Jr. and T. Matthew Miller of Bradley, Arant, Rose & White, Birmingham, for Imaging Management Associates, Inc. and Leonard Vernon.
William M. Bouldin of Guin, Bouldin & Alexander, Russellville, for Joseph F. Rooney, Jr. and Medicor, Inc.
James H. Anderson of Beers, Anderson, Jackson & Smith, Montgomery, for Appellees.
*2 HORNSBY, Chief Justice.
The defendants, Imaging Management Associates, Inc. ("IMA"), Leonard Vernon, Medicor, Inc., and Joseph Rooney appeal from a default judgment in favor of the plaintiffs, Southern Dependacare, Inc. ("Dependacare"), and Jack Hilton in the amount of $4,240,500 in compensatory damages and $1,000,000 in punitive damages. The issue is whether the trial court abused its discretion in denying the defendants' motions to set aside the default judgment.

I. Facts
IMA develops and establishes medical diagnostic centers. In the summer of 1993, IMA began negotiating with Dependacare, intending to purchase the stock or assets of Dependacare. Vernon was the president of IMA, and Rooney was an officer and director of IMA. All parties ultimately agreed that, because of federal Medicare requirements, the sale would not be possible. After ending negotiations with IMA, Rooney, the sole owner of Medicor, began negotiating with Dependacare for Medicor to purchase the Dependacare stock or assets. Although the record is not clear as to exactly why those negotiations ended, the parties never reached a formal agreement. There is much factual dispute as to how extensive the negotiations became before they failed. The record also contains contradictory testimony as to where negotiations took place, what exchanges were made during the period of the negotiations, and what employees were involved in the negotiations.
On March 2, 1994, Dependacare and Jack Hilton sued IMA, Vernon, Medicor, and Rooney, alleging breach of contract and fraud. They alleged in their complaint that the defendants had fraudulently made misrepresentations during the negotiations and that the defendants' actions had created an enforceable contract. The plaintiffs further alleged that, as a result of the defendants' actions, Dependacare had suffered financially and Hilton, the president of Dependacare, had personally suffered financially. The plaintiffs claimed $10,000,000 damages for the alleged breach of contract and claimed compensatory and punitive damages in "such an amount as the jury may determine" for the defendants' allegedly fraudulent conduct. The defendants never answered. There is evidence that the defendants were aware that the plaintiffs had filed this action against them, but the defendants alleged, and continue to maintain, that the plaintiffs failed to properly serve the defendants. The summons and the complaint intended for IMA, Vernon, and Medicor were sent by certified mail to 5143 West Woodmills Drive, Wilmington, Delaware. The certified mail receipt shows that the documents were received by an IMA employee, Lisa M. Vincent, on March 7, 1994. The summons and the complaint intended for Rooney was also sent by certified mail to the same address, but the certified mail receipt shows the signature of Heather Rooney, who was Rooney's daughter and also an employee of IMA.
On April 12, 1994, the plaintiffs obtained an entry of default against IMA, Vernon, and Medicor. The trial court held a hearing on April 22, 1994, to assess damages, and on that date rendered a judgment for $4,240,500 in compensatory damages and $1,000,000 in punitive damages. On May 23, 1994, the plaintiffs obtained an entry of default against Rooney, and the trial court entered a default judgment against Rooney on June 2, 1994, for the same amount of damagesthe four defendants were liable jointly. This damages amount was based on the general testimony of Dependacare's accountant as to losses Dependacare allegedly had suffered. The damages assessed for breach of contract were as follows: 1) $2,000,000 in accounts receivable that were allegedly assigned to the defendants; 2) $1,341,000 of income that was allegedly lost because six clinics owned by the plaintiffs were closed "at the request of the defendants"; 3) $327,000 allegedly advanced by Hilton to "fund personal corporations"; 4) $210,000 allegedly "collected by the defendants from [Dependacare's] accounts receivable"; 5) $150,000 claimed for allegedly "loss of bank financing"; 6) $75,000 allegedly lost by Hilton because of the sale of his house, office building, and automobile; 7) $75,000 worth of computer equipment held by the defendants; and 8) $68,500 for the value of the defendants' use of an airplane *3 owned by Dependacare. The trial court awarded $1,000,000 in punitive damages upon the request of the plaintiffs' attorney.
The defendants were not present for the hearing that had preceded the entry of the judgment, and the defendants maintain that they did not receive notice of that hearing. Although the plaintiffs allege that a certified copy of the entry of default was mailed to the defendants in order to notify them of the damages hearing, there is no evidence of this mailing in the record. On July 15, 1994, IMA and Vernon filed a motion to set aside the default judgment against them, and on August 5, 1994, Medicor and Rooney filed a motion to set aside the default judgments against them. The court held a hearing on August 26, 1994, and denied the motions on November 3, 1994. The defendants appealed.

II. Discussion
Initially, we note that the trial court has broad discretion when determining whether to grant a defendant's motion to set aside a default judgment. However, this discretion is not boundless. Kirtland v. Fort Morgan Auth. Sewer Serv., Inc., 524 So.2d 600 (Ala.1988). The trial court must balance two competing policy interests associated with default judgmentsjudicial economy and the litigant's right to defend on the merits. Kirtland, 524 So.2d at 604. For the trial court to effectively balance those interests, this Court established a two-step process to be undertaken by the trial court.
First, a trial judge must presume that cases "should be decided on the merits whenever practicable." Kirtland, 524 So.2d at 604, citing Hritz v. Woma Corp. 732 F.2d 1178, 1181 (3d Cir.1984). This Court has held that "preserving a litigant's right to a trial on the merits is paramount and, therefore, outweighs the interest of promoting judicial economy." Kirtland, 524 So.2d at 604. To that end, this Court explained:
"[A] trial court, in determining whether to grant or to deny a motion to set aside a default judgment, should exercise its broad discretionary powers with liberality and should balance the equities of the case with a strong bias toward allowing the defendant to have his day in court."
Id., at 605.
Second, with that underlying presumption established, this Court in Kirtland also provided a guideline for the trial courts to follow in exercising their discretionary authority, by adopting a three-factor analysis. Therefore, when determining whether to set aside a default judgment, the trial court must consider the following three factors: "1) whether the defendant has a meritorious defense; 2) whether the plaintiff will be unfairly prejudiced if the default judgment is set aside; and 3) whether the default judgment was a result of the defendant's own culpable conduct." Kirtland, 524 So.2d at 605.
In the present case, the defendants filed their motions to set aside the default judgments more than 30 days after the default judgments were entered. Therefore, as Rule 55(c), Ala.R.Civ.P., motions, those motions cannot be considered by this Court.[1] However, although Kirtland involved only the consideration of a Rule 55(c) motion, this Court also applies the Kirtland analysis in proceedings under Rule 60(b) to set aside default judgments. See, e.g., Lee v. Martin, 533 So.2d 185, 186 (Ala.1988); DaLee v. Crosby Lumber Co., 561 So.2d 1086, 1089-91 (Ala. 1990). The defendants' motions to set aside the default judgments came within the four-month limitation for Rule 60(b) motions. Therefore, we will consider the motions as Rule 60(b) motions and will apply the policies and considerations established by this Court in Kirtland to determine whether the default judgments should be set aside, and we will then address whether the defendants have shown, under Rule 60(b), a "reason justifying relief from the operation of the judgment[s]." See DaLee v. Crosby Lumber Co., supra.

III. Defendants' Meritorious Defense
To establish a meritorious defense, the movant must "satisfy the trial court only *4 that he is prepared to present a plausible defense, not that he would necessarily prevail at a trial on the merits." Fries Correctional Equip. v. Con-Tech, Inc., 559 So.2d 557, 561 (Ala.1990), citing Ex parte Illinois Central Gulf R.R., 514 So.2d 1283, 1288 (Ala.1987) (holding that a default judgment should be set aside in a situation in which the defendant's attorney who would have answered the complaint did not learn about the complaint until after the default judgment had been entered, because he was in trial). Furthermore, this Court has stated:
"[A] defaulting party has satisfactorily made a showing of a meritorious defense when allegations in an answer or in a motion to set aside the default judgment and its supporting affidavits, if proven at trial, would constitute a complete defense to the action, or when sufficient evidence has been adduced either by way of affidavit or some other means to warrant submission of the case to the jury."
Fries, 559 So.2d at 561, quoting Kirtland, supra, at 606.
The defendants submitted evidence that, if properly supported, either constitutes a complete defense or creates issues that should be submitted to a jury. For example, there is a clear dispute as to whether the defendants were properly served. IMA, Vernon, Rooney, and Medicor all assert that they did not receive the summons and the complaint filed by the plaintiffs. The only evidence of service is evidence that an employee of IMA, Lisa Vincent, signed the return card on the certified mail for the service on IMA, Medicor, and Vernon at IMA's corporate address in Delaware. However, Vernon testified that Vincent was not authorized as an agent to receive mail for him as an individual or to receive mail for IMA. The defendants also contend that the Delaware address was not the principal place of business for Medicor. Rather, the defendants contend that Medicor's principal place of business is in Tennessee. The name "H. Rooney" was written on the return card of Rooney's complaint and summons. There was evidence that this name was written by Rooney's daughter Heather Rooney while she was working at IMA. There is no evidence in the record that Lisa Vincent or Heather Rooney was authorized to accept service of process for any of the defendants. Based on this alleged failure of service, the defendants maintain that they learned of this lawsuit after the default judgments had been entered. Therefore, the record does not support an inference that service of process was proper. If the defendants were not properly served with the complaint and the summons, then they would have a meritorious defense at trial. See, e.g., Shaddix v. Shaddix, 603 So.2d 1096 (Ala.Civ.App.1992).
Further, and more important to this case, this Court has held that if there is a dispute as to liability and damages, even avoidance of service or ignoring service is not sufficient grounds for the trial court to refuse to set aside a default judgment. Rather, to deal with such situations, the trial court should impose costs on the defendants. Fries, supra. However, because the trial court refused to set the judgment aside, for the purpose of our analysis we will assume that service could have been proper. Therefore, pursuant to Fries, supra, a significant part of the remaining inquiry is whether there are other meritorious defenses and whether damages were sufficiently proven.
The two claims against the defendants alleged breach of contract and fraud. The defendants presented substantial evidence that, although serious negotiations were underway, no formal contract was entered. There is no allegation in the plaintiffs' complaint that a formal contract, either written or oral, was ever entered. Rather, the plaintiffs allege that actions taken by the defendants created an enforceable contract. However, the plaintiffs concede that negotiations with IMA were terminated because of federal Medicare regulations. The plaintiffs further allege in their complaint that the defendants, including IMA and Vernon, made representations, both individually and together, that were false and that were known to be false, or that were made willfully or recklessly or negligently. The plaintiffs submitted affidavit testimony from their employees that indicated that the defendants had contact with the different clinics operated by the plaintiffs, and that the defendants had become *5 involved in those operations. This allegation is primarily based on evidence that the defendants were working with employees of the plaintiffs in changing all of the plaintiffs' computer operations to comport with the defendants' business. It is clear from the record that a dispute arose between the parties during these business negotiations, but the record does not show that any misrepresentations, intentional or not, made by the defendants caused this controversy. Therefore, the defendants have raised several meritorious defenses, warranting submission to a jury. Kirtland, supra.
According to Fries, supra, even if the trial court believes that the defendants avoided or ignored service of process, the court must consider whether damages were sufficiently proven. The complaint prays for $10,000,000 in compensatory damages on the breach of contract claim and for an award of compensatory and punitive damages in an amount to be determined by a jury for the fraud claim. Therefore, proof of damages was required before a judgment could be entered against the defendants. In the hearing to assess damages, Hilton and Dependacare's accountant testified as to the financial losses allegedly suffered as a result of this dispute. However, no connection was made between these losses and the alleged misrepresentations made by the defendants. In fact, during the hearings on the defendants' motions to set aside the default judgments, the defendants presented evidence that during the negotiations a $186,000 payment was made from Medicor to the plaintiffs that was not reflected in the calculation of damages. The defendants also testified that certain computer equipment, the cost of which was included in the damages award, had been returned to the plaintiffs, and the defendants testified that they had no knowledge of the plaintiffs' alleged loss of bank financing that had been taken into account in setting the damages award. The defendants also argue that there is no evidence of the alleged loss of accounts receivable, and they note that the income allegedly lost because of the closing of the clinics would properly have been considered potential profit, not income. The defendants also correctly maintain that there is no proof that they caused the plaintiffs to close the clinics. In short, the defendants argue that the damages were speculative and were not properly supported by the evidence. We agree.
The plaintiffs made no showing to contradict the defendants' testimony as to damages. The record fails to provide sufficient evidence to support the trial court's damages award. At most, the damages award was based on speculation by Hilton and Dependacare's accountant. Even though a default judgment renders a defendant liable, the plaintiff has the burden of proving damages that allegedly resulted from the liability. Therefore, even without further support, these defendants have demonstrated that they have a meritorious defense regarding the damages that were assessed by the trial court. There is evidence to support the inference that the damages awarded far exceeded the amount of actual loss suffered, even if the plaintiffs can show liability and resultant damage.
The trial court also awarded punitive damages. In the complaint, the plaintiffs pray for compensatory and punitive damages in an amount to be determined by a jury. The defendants argue that, under Rule 54(c), Ala. R.Civ.P., the judgment is void because it is "different in kind from or exceed[s] in amount that prayed for" in the complaint. The defendants argue that because the plaintiffs never withdrew their jury demand, the defendants at least have a right to have a jury consider the award of punitive damages. See Caver v. Caver, 410 So.2d 902 (Ala.Civ. App.1982) (holding that to award a particular form of relief in a default judgment is erroneous and subject to attack on direct appeal if no claim for that relief was made or disclosed in the pleadings); see also Continental Casualty Co. v. Barlar, 316 So.2d 690 (Ala.1975). Because the plaintiffs did not pray for a specific amount of damages on the fraud claim, the plaintiffs had the burden of sufficiently proving these damages before the default judgment was entered. Under Alabama law, the plaintiff must prove the facts supporting a punitive claim, by "clear and convincing evidence." Ala.Code 1975, § 6-11-20. This burden was not met by the plaintiffs in this case. Rather, the plaintiffs' *6 attorney simply requested that the trial court award $1,000,000 in punitive damages.

IV. Unfair Prejudice to the Plaintiff
The second factor to be considered pursuant to Kirtland, supra, is whether the plaintiffs would be unfairly prejudiced if the default judgment is set aside. As stated in Fries, supra, "Such prejudice must be substantial, and mere delay in the recovery on the claim is not sufficient prejudice to justify refusal to set a default judgment aside...." 559 So.2d at 562, citing Kirtland, supra. The plaintiffs have not demonstrated prejudice so great that it could not be remedied by imposing costs on the defendants. The plaintiffs argue only that, based on Rooney's testimony, there is a possibility that if these judgments are set aside then the defendants would counterclaim for money they feel the plaintiffs owe them. However, Rooney stated only that he wanted to settle the dispute and that perhaps Hilton and Dependacare owed him money. He did not say he intended to counterclaim. Moreover, Rooney's testimony creating the fear of a counterclaim lends support to the fact that the defendants have a meritorious defense.

V. The Defendant's Culpable Conduct
The last consideration is whether the defaulting parties were guilty of culpable conduct. Kirtland, supra. As stated above, the evidence is disputed as to whether the defendants had notice of the lawsuit and intentionally avoided answering the complaint filed against them. It appears from the record that the trial court denied the defendants' motions to set aside the default judgments based on this allegation. In Fries, supra, this Court held that although the trial court determined from the record that the defendant had "intentionally flouted the judicial process" by ignoring service of the summons and the complaint, the trial court erred by denying the motion to set aside the default judgment, because the claims were so much in dispute and because of the size of the judgment. 559 So.2d at 562. In Fries, we stated:
"The evidence given at the hearing on damages was largely speculative, consisting primarily of worst-case scenarios as to additional expenses that [the plaintiff] might incur.... In such a circumstance, a defendant's avoidance of service might be grounds for imposition of costs or other sanctions, but should not be grounds for a refusal to set aside such a large default judgment."
559 So.2d at 562-63. See, also Prescott v. Baker, 644 So.2d 877 (Ala.1994) (holding that the trial court erred in not setting aside the default judgment against a doctor where the doctor raised fact questions and demonstrated that the plaintiff would not suffer substantial prejudice, notwithstanding the fact that the doctor had deliberately attempted to frustrate the trial court's efforts to set a trial date). The evidence in Fries indicated that the defendant simply refused, on more than one occasion, to receive the certified mail. In this case, the plaintiffs allege that the defendants took actions, such as making telephone calls in regard to the lawsuit, that indicated that the defendants had received the summons and the complaint, but simply avoided responding to the lawsuit. The defendants deny this allegation, and the record reveals many inconsistencies on this point.

VI. Rule 60(b) Grounds
Having considered the Kirtland factors relating to whether a default judgment should be set aside, we must address whether the defendants have presented a reason justifying Rule 60(b) relief. The defendants' Rule 60(b) motions made a number of allegations, including mistake, inadvertence, surprise, and excusable neglect, which fall under Rule 60(b)(1). As discussed throughout this opinion, the defendants maintain that they were not properly served, and the evidence in the record does not support a finding of sufficient service of process. This state of the evidence, especially in light of the strong policy against affirming default judgments that involve highly disputed issues of liability and damages, requires the conclusion that Rule 60(b) relief is proper in this case.

VII. Conclusion
Typically, this Court would be inclined to defer to the trial court's ruling, and only *7 slightly more evidentiary support for these default judgments could have resulted in an affirmance. However, because of the lack of evidence as to service of process and the cursory and conflicting evidence as to liability and damages, we hold that the trial court erred in not setting aside the default judgments against IMA, Vernon, Medicor, and Rooney. Those judgments are reversed and the cause is remanded for further proceedings consistent with this opinion.
1940171REVERSED AND REMANDED.
1940180REVERSED AND REMANDED.
ALMON, SHORES, HOUSTON, and COOK, JJ., concur.
MADDOX, J., concurs in part and dissents in part.
MADDOX, Justice (concurring in part; dissenting in part).
I agree with the majority that the default judgment against Imaging Management Associates, Inc., Vernon, Medicor, Inc., and Rooney is due to be reversed and the cause remanded regarding the issue of damages; I can find no clear basis for the amount awarded by the trial court ($4,240,500 in compensatory damages and $1,000,000 in punitive damages). However, I must respectfully dissent as to the majority's conclusion that the trial court abused its discretion in refusing to set aside the default judgment it had entered against this defendant, insofar as the question of liability is concerned. This is the same result that I thought this Court should have reached in Ex parte Illinois Central Gulf R.R., 514 So.2d 1283 (Ala.1987), a case arising out of the same circuit court from which this case arises.
I realize that this Court, in Kirtland v. Fort Morgan Auth. Sewer Serv., Inc., 524 So.2d 600 (Ala.1988), a case heavily relied upon by the majority here, has facilitated the setting aside of default judgments. I dissented in Kirtland, saying, in part:
"I am a strong believer in the right of litigants to have their day in court, but I also strongly believe in the right and duty of trial judges to control their dockets and to punish parties who are guilty of culpable conduct. I believe there is enough evidence in this record to sustain the trial judge's decision to award the default judgment and his decision not to set it aside. I would affirm his judgment."
524 So.2d at 610. It appears to me that it is within the domain of the trial court to balance the equities of each case, and that the trial court is in the best position to evaluate the good faith and credibility of all parties when it comes to determining whether or not a default judgment should be set aside. See Dobson's Petting Zoo v. Goens, 611 So.2d 257 (Ala.1992), citing Kirtland. The issue in this case is whether the trial court abused its discretion in denying the defendants' motion for relief from judgment under Rule 60(b)(1). It is well established that the decision to grant or to deny relief pursuant to a Rule 60(b) motion is discretionary with the trial court. DaLee v. Crosby Lumber Co., Inc., 561 So.2d 1086 (Ala.1990), citing Smith v. Clark, 468 So.2d 138 (Ala.1985); Textron, Inc. v. Whitfield, 380 So.2d 259 (Ala.1979). In DaLee, this Court said that "[i]n reviewing the trial court's ruling on such a motion, we cannot disturb the trial court's decision unless the trial court abused that discretion in denying the motion," 561 So.2d at 1089, citing Baker v. Ball, 473 So.2d 1031 (Ala. 1985), and Textron.
It appears to me that the judgment of the trial court should be affirmed as to the liability portion of this case, under the policy established in Kirtland, wherein this Court held that "a trial court's broad discretionary authority under Rule 55(c) should not be exercised without considering the following three factors: 1) whether the defendant has a meritorious defense; 2) whether the plaintiff will be unfairly prejudiced if the default judgment is set aside; and 3) whether the default judgment was a result of the defendant's own culpable conduct." 524 So.2d at 605 (citations omitted).
The trial judge in this case, after a hearing, found that the defaulting parties had not convinced him under the facts that the judgment should be set aside. Because I believe the record contains sufficient evidence to *8 show that the defaulting parties had notice of the lawsuit, I cannot agree with the majority that the trial court abused its discretion by refusing to set aside the default judgment in regard to liability; however, I must agree with the majority that the trial court's refusal to set aside that portion of the default judgment regarding the amount of damages is an abuse of discretion and should be reversed.
NOTES
[1] Rule 55(c) states: "In its discretion, the court may set side an entry of default at any time before judgment. The court may on its own motion set aside a judgment by default within 30 days after the entry of the judgment. The court may also set aside a judgment by default on the motion of a party filed not later than 30 days after the entry of the judgment."