903 So.2d 802 (2005)
ROYAL INSURANCE COMPANY OF AMERICA
v.
CROWNE INVESTMENTS, INC.
1030310.
Supreme Court of Alabama.
December 17, 2004.
*804 Stanley A. Cash and Michelle K. Pieroni of Huie, Fernambucq & Stewart, LLP, Birmingham, for appellant.
Frank A. Hickman and P. Richard Hartley of Hartley & Hickman, Greenville, for appellee.
HARWOOD, Justice.
Royal Insurance Company of America ("Royal") appeals from the denial of its motion to set aside a default judgment previously entered by the Butler Circuit Court in favor of Crowne Investments, Inc. ("Crowne"). We reverse and remand.
*805 Crowne owns and operates a nursing-home facility known as Crowne Healthcare of Greenville. From August 1, 2001, to August 1, 2002, Royal insured this facility against physical damage and losses. One section of the policy insuring the facility stated that Royal would "pay for the actual loss of Business Income you sustain due to the necessary suspension of your `operations.'" In a section entitled "Additional Coverage(s)," the policy stated that Royal would pay for "loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused ... by ... [h]idden decay." The policy also contained a section entitled "Exclusions," which stated, in pertinent part:
"2. We will not pay for loss or damage caused by or resulting from any of the following ...
"....
"b. [D]eterioration ... [or]
"....
"i. Faulty, inadequate or defective:
"....
"(2) Design, specifications, workmanship, repair, [construction]; [or]
"(3) Materials used in ... construction...."
In September 2001, during renovations to Crowne's nursing-home facility, Crowne employees discovered deficiencies in portions of the subflooring of the facility. On September 21, 2001, Crowne's general contractor inspected the flooring and determined that the plywood subflooring in portions of the facility had partially collapsed. That day, Crowne notified Royal and made a claim under the insurance policy, seeking reimbursement both for property damage and for lost business income. Royal arranged for the facility to be inspected by an engineering firm.
On October 23, 2001, The VAIL Consulting Company ("VAIL"), an independent engineering firm hired by Royal, inspected Crowne's nursing facility. In its report, dated November 8, 2001 ("the VAIL report"), VAIL gave two reasons for the deterioration of the subfloor. First, the builder had used interior-grade plywood on the subflooring, not the exterior-grade plywood required by industry standards. Second, the builder had failed to install a proper waterproofing system underneath the building, and moisture was allowed to remain under the building, causing the plywood to deteriorate. After receiving the VAIL report, Royal's national general adjustor, Orvin Willis, notified Crowne by letter dated November 16, 2001,[1] that the insurance policy did not cover Crowne's loss.
On March 26, 2003, Crowne sued Royal in the Butler Circuit Court alleging that Royal breached the terms of its insurance policy. Crowne's complaint identified the insurance policy as "bearing policy number PSU005666," being "a Royal Flex Policy," and having "the policy period of August 1, 2001, through August 1, 2002." The policy stated that it provided protection for "Crowne's nursing-home facility in Greenville, Alabama." The complaint alleged that the policy "provided Crowne with protection from actual loss of business income and extra expenses incurred during a necessary suspension of its business operations caused by direct loss or damage to the insured premises." The complaint quoted the provisions regarding coverage for collapse and stated that "[a] copy of the pertinent provisions of the policy are attached hereto as Exhibit `A' and incorporated *806 herein by reference." The complaint additionally referred to "Royal's denial letter," written "[o]n or about November 6, 2001," pursuant to which Royal notified "Crowne ... that it was denying Crowne's claim," and stated that a copy of it was also "attached hereto as Exhibit `B' and is incorporated herein by reference."[2]
On March 31, 2003, Crowne served Royal's registered agent by certified mail; the complaint was then forwarded to Royal's legal department. From the legal department, the complaint was routed through Royal's robotic mail system to Thomas Crowley, the supervisor of one of Royal's units. Because of a malfunction in this system, however, the complaint disappeared before it reached Crowley. Because he never received the complaint, Crowley never notified the law firm to whom he would have sent the complaint under standard procedures. Consequently, neither Royal nor its counsel took any action on the complaint.
Because Royal did not respond to the complaint within 30 days, see Rule 12(a), Ala. R. Civ. P., Crowne moved for a judgment by default against Royal, which the court entered on June 13, 2003. See Rule 55(b)(2), Ala. R. Civ. P. Royal was served with a copy of the judgment, and on July 11 Royal filed a motion to set it aside. Attached to Royal's motion was an affidavit by Crowley. The affidavit recited Crowley's position within Royal, described his responsibilities with respect to receiving complaints filed against Royal, and explained what procedure he would have followed had he actually received the complaint filed in Crowne's action. He stated that he was unaware that Crowne had filed any action against Royal until he received notice of the default judgment. The fourth paragraph of Crowley's affidavit stated:
"On receipt of this Notice of Default, I contacted counsel and requested that immediate steps be taken to set aside the default Judgment. Based on my review of the claim file material, [Royal] has a meritorious defense to this action, since Royal hired [VAIL, which] had rendered the opinion that the failure of the flooring at the facility owned by [Crowne], which forms the basis of this action, was apparently caused by deterioration of the property that resulted in damage or destruction to the property itself. As a result, it is my opinion, based on my experience in the property claims industry, that there is no coverage, and therefore, [Royal] declined to reimburse [Crowne] for this loss."
Despite the affidavit's references to the VAIL report and Royal's letter declining coverage, neither document was attached to Royal's motion to set aside the default judgment.
The trial court conducted a hearing on Royal's motion, at which Royal's counsel stated:
"I would like to provide to the Court, I believe according to the pleadings the Letter of Denial was attached to the original complaint and I haven't been able to confirm that, so I would like to offer the Letter of Denial as our Exhibit B, the Engineer Report as Exhibit C and a complete copy of the policy as D just for completeness. I will give Frank [Crowne's counsel] a copy of the same package.
"But there's nothing there that has not been set out in the original pleadings and responses in the Motion to Set Aside the Default."
Counsel for Crowne then responded:
"First of all I object to them offering you this information right here. They *807 even filed their motion to set aside the default judgment and they attached a little short affidavit to it and realizing that they had not set out any factual basis or set out any relevant provision of anything that would authorize you to set aside the default judgment ... to drag all this stuff in here today and give it to you at this point and time and none of that is substantiated, nor a proper foundation has been laid before this Court and we object to any consideration by this Court of this at this point in time."
(Emphasis added.) The trial court did not rule on the objection made by Crowne's counsel. Later in the hearing, counsel for Royal stated:
"Judge, the Complaint in this case says that it attaches as Exhibit A this letter of declination which is our document B. I cannot find a copy of it in the Court file so I just point out to the Court that this was supposed to have been attached to the Complaint as an original part of the Court file and I'm supplementing that since for some reason it's not a part of the Complaint."
The court again declined to rule on Crowne's objection, stating that it would "take a look at" Royal's proffered exhibits and decide whether it would exclude or admit them. However, both Royal and the trial court miscalculated the deadline for disposing of the motion to set aside to avoid its being denied by operation of law, see Rule 59.1, Ala. R. Civ. P., and the motion was denied by operation of law on October 9, 2003, the trial court never having ruled upon the evidentiary issue.
Royal timely filed its notice of appeal and, in due course, the clerk of the Butler Circuit Court issued its certificate of completion of the record. The completed record did not include the three documents Royal offered at the hearing. Royal filed with the trial court a motion to supplement or correct the record. The court did not rule on that motion within 14 days; thus, it was denied by operation of law. Rule 10(f), Ala. R.App. P. Royal subsequently filed with this Court a motion to supplement or correct the record. We remanded the matter to the trial court, which entered an order stating that after Royal's motion to set aside the default judgment against it was denied pursuant to Rule 59.1, it "disposed" of the documents offered at the hearing, treating them "as merely convenience copies rather than filings or evidentiary submissions since they had not been marked for identification." The court ordered that the record be supplemented to include a copy of the insurance policy, Royal's letter declining coverage, and the VAIL report, "but without comment as to whether or not the documents were admissible for consideration since [the trial court] did not make that decision at the trial level." (Emphasis added.)

Standard of Review
In reviewing the denial of a motion to set aside a default judgment, we must determine whether the trial court exceeded its discretion under Rule 55(c), Ala. R. Civ. P., in denying the motion. Kirtland v. Fort Morgan Auth. Sewer Serv., Inc., 524 So.2d 600, 603 (Ala.1988). Although Rule 55(c) confers broad discretion upon a trial court, this discretion is not boundless. 524 So.2d at 604.

Analysis
This Court, in Kirtland, supra, observed that in reviewing a trial court's denial of a motion to set aside a default judgment, we must balance two competing policy goals: 1) promoting judicial economy and 2) preserving an individual's right to present a meritorious defense. Kirtland, 524 So.2d at 604. We explained that when exercising the discretion granted by Rule 55(c) a trial court should begin with the presumption that "cases should be decided *808 on the merits whenever practicable." Kirtland, 524 So.2d at 604. We apply a three-pronged test to determine whether a trial court has exceeded its discretion in denying a motion to set aside a default judgment. In reviewing such a motion, a trial court must consider the following three factors: 1) whether the defendant has a meritorious defense; 2) whether the plaintiff will be unfairly prejudiced if the default judgment is set aside; and 3) whether the default judgment was a result of the defendant's own culpable conduct. Kirtland, 524 So.2d at 605.

I. Whether the Defendant Has a Meritorious Defense
In Kirtland, we noted that a trial court should begin its analysis of whether it should exercise discretionary authority under Rule 55(c) with the presumption that a case "should be decided on the merits whenever practicable." 524 So.2d at 604. The presumption is undercut, however, if the answer to the first of three inquiries a court must makewhether the defendant has a meritorious defenseis negative. The existence of a meritorious defense is a "threshold prerequisite," Kirtland, 524 So.2d at 605, because without a meritorious defense, a finding that the plaintiff would not be prejudiced and a finding that the defendant was not culpable would matter little. A meritorious defense need not be a perfect defense, nor one that would necessarily prevail at trial. Rather, a meritorious defense is merely a "plausible" defense. Kirtland, 524 So.2d at 605. That is, a meritorious defense must simply "induce the trial court reasonably to infer that allowing the defense to be litigated could foreseeably alter the outcome of the case." 524 So.2d at 606 (emphasis added).
We have specifically stated that a defendant can successfully present a meritorious defense either by setting forth allegations that, if proven at trial, would constitute a complete defense or by submitting evidence that would at least create a jury question. Kirtland, 524 So.2d at 606. The defendant's allegations "must be more than mere bare legal conclusions without factual support"; they must set forth "relevant legal grounds substantiated by a credible factual basis." 524 So.2d at 606.
Royal both set forth allegations and proffered evidence relating to its proposed defense. Besides Crowley's affidavit, Royal relies on three exhibits offered at the hearing on the motion to set aside the default judgment: a copy of the insurance policy, a copy of the VAIL report, and a letter from Royal to Crowne declining coverage. Each of these exhibits provides at least partial support for the allegations set forth in Crowley's affidavit. However, Crowne objected to each of these exhibits on the ground that it was not authenticated.[3] As noted, the trial court did not rule on those objections; thus, in order to determine whether Royal made the requisite showing of a meritorious defense, we must determine whether Crowne's objection as to each exhibit was well-taken. If so, and a document was not sufficiently authenticated, we cannot consider the document in determining whether Royal had a meritorious defense.

*809 A. Insurance Policy

Rule 901(a), Ala. R. Evid., states:
"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."
This requirement, in other words, seeks to ensure that the evidence being offered is authentic. The evidence establishing authenticity, however, "does not have to be conclusive or overwhelming; rather, it must be strong enough for the question to go to the jury." Advisory Committee's Notes, Rule 901(a), Ala. R. Evid.
Rule 901(b) provides several methods of authenticating evidence. The insurance policy before us, however, lends itself to authentication by only one of those methods, namely: "examples of authentication or identification conforming with the requirements of this rule [include] [a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with other circumstances." Rule 901(b)(4).
The insurance policy offered by Royal has certain "distinctive characteristics" worth noting. Corresponding exactly to the description of the policy contained in the complaint, it is "a Royal Flex Policy" bearing policy number PSU005666, and having a coverage period of August 1, 2001, through August 1, 2002. It recites that Crowne is the insured under the policy, and it offers protection for Crowne's nursing-home facility in Greenville. The policy states that it will pay for the actual loss of business income sustained by Crowne should it be forced to temporarily suspend operations of its nursing-home facility. The policy also provides additional coverage in the event all or part of a building collapses.
Although this alignment of characteristics between the policy as described by Crowne in its complaint and the policy proffered by Royal does not establish beyond a shadow of a doubt the authenticity of the latter, it does constitute a prima facie showing that the policy offered by Royal is likely authentic. That is all that is required under Rule 901, Ala. R. Evid. Thus, we deem Crowne's objection on the basis of authentication was not well-taken with respect to the insurance policy, and we hold that the policy should be considered in determining whether Royal has made the requisite showing of a meritorious defense.

B. Letter Declining Coverage
Royal also offered a letter it purportedly wrote to Crowne, dated November 16, 2001. The letter offered by Royal states that based upon the VAIL report, Royal concluded that Crowne's policy did not cover Crowne's loss. The letter referred to the "Exclusions" section of the policy, specifically the very provisions quoted earlier in this opinion.
We must determine whether the letter declining coverage was authenticated. Again we look to Rule 901(b) and particularly the test of distinctive characteristics presented in subsection (b)(4). One distinctive characteristic is worthy of extended examination: Royal's letter denying coverage was written on company letterhead. This Court has never considered the authenticity of a document based upon whether it bore a letterhead. Other jurisdictions, however, have held that the fact that one's letterhead is found on a document either is an important characteristic suggesting authenticity, see, e.g., United States v. Hoag, 823 F.2d 1123, 1126 (7th Cir.1987)(cited in Charles W. Gamble, McElroy's Alabama Evidence § 319.01(8) (5th ed.1996)), or fully satisfies the authenticity requirement, see, e.g., Denison v. Swaco Geolograph, 941 F.2d 1416, 1423 (10th Cir.1991); S.E.C. v. Poirier, 140 *810 F.Supp.2d 1033, 1039 n. 4 (D.Ariz.2001); Perez v. Alcoa Fujikura, Ltd., 969 F.Supp. 991, 998-99 (W.D.Tex.1997); State v. Clites, 73 Ohio App.3d 36, 40, 596 N.E.2d 550, 553 (1991). But see Orr v. Bank of America, 285 F.3d 764, 777 (9th Cir.2002)(letterhead insufficient to establish authenticity). We believe the first alternative is the better ruleespecially given the mention in Rule 901(b)(4) of "other circumstances"and we today adopt the rule that the presence of a person's or company's letterhead on a document purportedly from that person or company is an important characteristic suggesting authenticity.
The fact that the letter from Royal to Crowne was written on Royal's letterhead is thus an important characteristic but is not dispositive of the document's authenticity. In addition to being on letterhead, the letter notes the name of the insured, the policy number, and the date the loss was reported, and, importantly, recites the information communicated in the VAIL report.
The one inconsistency mitigating against authenticity is that the letter offered by Royal is dated November 16, 2001, whereas the complaint states that the letter denying coverage was dated "on or about November 6, 2001." However, Royal's letter to Crowne was based upon the VAIL report, which is dated November 8, 2001. To accept Crowne's contention that the letter was dated November 6, this Court would have to believe the impossible or attribute to Royal and VAIL some conspiracy that Crowne does not charge. Therefore, Royal has made a prima facie showing that the copy of the letter to Crowne it proffered was authentic; we hold that it should also be considered in determining whether Royal has made a showing of a meritorious defense.

C. VAIL Report
Finally, Royal offered the VAIL report, which stated that Crowne's subflooring was deficient and needed costly repairs because the builder had improperly constructed the building, using improper materials and not installing a necessary waterproofing system.
Looking to the VAIL report, we again rely upon Rule 901(b)(4), Ala. R. Evid., to determine whether the VAIL report's "distinctive characteristics" authenticate it. The VAIL report was also written on company letterhead, and as noted above, we consider that to be an important characteristic suggesting authenticity. In addition to the letterhead, the letter discusses VAIL's inspection at Crowne's nursing-home facility and the reasons for the deficiencies in the subflooring; it refers to Crowne as having made a claim on its policy with Royal; and it states that the "date of loss" was September 21, 2001, the very date Crowne alleges that its own general contractor found the deficiencies. Taken together, we believe that the distinctive characteristics of the VAIL report indicate that it is authentic. Thus, we hold that the VAIL report should be considered in determining whether Royal has made a showing of a meritorious defense.

D. Royal's Defense as Supported by the Evidence
Viewing the facts as alleged by Crowley in his affidavit, and as supported by the insurance policy, the VAIL report, and the letter denying coverage, we conclude that Royal can present a plausible defense at trial. Royal can plausibly prove that the contract excluded from coverage any loss or damage caused by deterioration, as well as any damage resulting from the use of "[f]aulty, inadequate or defective... [construction or] [m]aterials used in... construction." Royal can plausibly prove that an independent engineer detected *811 faulty or inadequate construction in the builder's failure to install better waterproofing mechanisms; that the same engineer detected inadequate materials in the construction of the facility in that the builder used interior-grade plywood as the subfloor, which was, by definition, inadequate for use as a subfloor; and that the sum of these failures and inadequacies resulted in the deterioration of the subflooring. Consequently, Royal could plausibly prove that the deficiencies in Crowne's subflooring were caused by events excepted from coverage in Crowne's policy with Royal. The fact that Royal's policy did not cover Crowne's loss would, if proven, constitute a complete defense. Therefore, Royal has shown the existence of a meritorious defense, as against an objection going only to the authenticity of some of its evidentiary support.

II. Whether the Plaintiff Will be Prejudiced
The second factor that a trial court must consider in ruling on a motion to set aside a default judgment is whether the plaintiff will be unfairly prejudiced if it grants the motion. Kirtland, 524 So.2d at 606-07. This prejudice cannot take the form of mere delay or increased costs, because those can be remedied by imposing additional costs on the defendant if the plaintiff later prevails. 524 So.2d at 607. Rather, the prejudice must be substantial, facilitating fraud or collusion, resulting in the loss of evidence, or hindering discovery. 524 So.2d at 607.
Although common sense dictates that a plaintiff is usually in a far better position to know what prejudice might befall him from the delay, and more importantly how substantial that prejudice would be, we have placed upon the defendant the initial burden of demonstrating that the plaintiff will not be substantially prejudiced. As we have stated:
"We hold that when a party files a motion to set aside a default judgment, the movant has the initial burden of making a prima facie showing that the plaintiff will not be unfairly prejudiced if the default judgment is set aside. If the movant makes a prima facie showing that the plaintiff will not be unfairly prejudiced, the burden then shifts to the plaintiff to present facts showing that the plaintiff will be unfairly prejudiced if the default judgment is set aside."
Phillips v. Randolph, 828 So.2d 269, 278 (Ala.2002). Additionally, a defendant cannot simply state that the plaintiff will not be prejudiced if the motion to set aside the default judgment is granted. Phillips, 828 So.2d at 275. However, this case is different from both Phillips and from Triple D Trucking, Inc. v. Tri Sands, Inc., 840 So.2d 869 (Ala.2002), the only other case discussing a defendant's burden in this regard. Here, unlike each of those cases, a hearing was held on the motion, and we have a transcript of this hearing before us. Triple D, 840 So.2d at 871 n. 3 ("The record contains no transcript of the hearing...."); Phillips, 828 So.2d at 272 (no hearing mentioned). At this hearing, counsel for Royal presented a host of facts indicating that Crowne would suffer no prejudice if the court granted Royal's motion. Specifically, Royal stated:
"[T]he contractor that did the work at the nursing home is still available. The experts, the engineers for both sides who are aware of the circumstances of deterioration and the use of this plywood in the sub-flooring are available.
"We have complete photo documentation of the condition of the flooring and the material that was taken out.
"The contractor that did the work for the nursing home is still available. His witnesses are still available and the records from which they would claim damages, *812 such as this loss of profits that they contend that they have are just accounting records that exist in perpetuity. I can't believe that anything that existed in their corporate records in 2001 is not still available here today."
Counsel for Crowne did not seem to contradict this notion, in fact stating his understanding of this Court's holdings in that regard, as follows:
"The aspect of the prejudice to the [plaintiff] basically has been gutted by our Supreme Court to say that just mere delay, going to cost you some more money, it doesn't matter. They don't believe justice delayed is justice denied. So we don't need to talk about that aspect of it. Because apparently it's been settled up there by the boys."
We believe that Royal has sufficiently met its burden of making a prima facie showing that Crowne will not suffer substantial prejudice if the motion to set aside the default judgment is granted. Once the burden shifted, Crowne failed to present facts showing that it would be unfairly prejudiced if the motion to set aside the default judgment is granted. In fact, its argument on appeal focuses solely upon the notion that Royal did not meet its initial burden.
We therefore hold that Royal has presented sufficient evidence to demonstrate the second factor in our Kirtland analysisthat Crowne will not suffer unfair prejudice if the default judgment is set aside.

III. Whether the Defendant's Conduct was Culpable
The third factor that we must consider is whether Royal's failure to respond to Crowne's complaint was the result of the former's "culpable conduct." In Kirtland, we defined a culpable party as one that conducted itself "wilfully or in bad faith," further explaining that "[n]egligence by itself is insufficient." Kirtland, 524 So.2d at 607. Willful conduct and bad faith are characterized by "incessant and flagrant disrespect for court rules, deliberate and knowing disregard for judicial authority, or intentional nonresponsiveness." 524 So.2d at 608. This is the definition of culpability for purposes of setting aside a default judgment under Rule 55(c).
In the case before us, Royal has presented evidence, which Crowne has not challenged, that the complaint initiating Crowne's action against it arrived in Royal's legal department and that it was sent via a robotic mail system to Thomas Crowley. Crowley was the individual assigned the task of contacting lawyers to ensure that complaints initiating legal proceedings were answered. That other people at Royal may have seen the complaint before Crowley would have seen it is irrelevant, because they would simply have assumed that Crowley received the complaint and that he was making appropriate arrangements for a defense. For some unknown reason, Crowley never received the complaint, which had been sent via the robotic mail system. However, once Crowley received notice that a default judgment had been entered against Royal, he immediately contacted a lawyer to involve the company in the case. We hold that Royal has presented sufficient evidence indicating that its conduct was in no way culpable, but was, at worst, negligent.

Conclusion
Because Royal has demonstrated that it has a meritorious defense, that Crowne will suffer no unfair prejudice if the motion to set aside the default judgment is granted, and that its conduct was not culpable, Royal has demonstrated that it was entitled to have the default judgment set aside. Consequently, we must conclude that the trial court exceeded its discretion in allowing the motion to set aside to be *813 denied by operation of law. We reverse the judgment and remand the cause for proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and BROWN and STUART, JJ., concur.
SEE, J., concurs specially.
SEE, Justice (concurring specially).
I concur fully in the main opinion. I write only to clarify my view that Royal satisfied the "meritorious defense" requirement for setting aside an entry of default even if the letter of denial and the insurance policy that are discussed in the main opinion were not admitted into evidence or considered.
The main opinion addresses the authentication of the letter of denial and the insurance policy. I believe that even without that evidence Royal has satisfied the "meritorious defense" requirement by specifically alleging a defense that, if proven, would act as a complete bar to Crowne's breach-of-contract claim. See Gilley v. Crawford, 549 So.2d 457, 458 (Ala.1989) ("[w]e note that the three-factor analysis requires us to look first at whether the defaulting party has demonstrated `the existence of a meritorious defense.' In her verified motion to set aside the default judgment, [the defendant] set out several defenses to the action, including adverse possession. This satisfies the Court's threshold prerequisite.") See also Kirtland v. Fort Morgan Authority Sewer Serv. Inc., 524 So.2d 600, 606 (Ala.1988)(the allegations "must counter the cause of action averred in the complaint with specificitynamely, by setting forth relevant legal grounds substantiated by a credible factual basis").
Royal's motion to set aside the default judgment was accompanied by the affidavit of Thomas Crowley, the supervisor of Royal's "major case unit" for property claims, which asserted the defense of policy exclusion. Crowley's affidavit sets forth a credible factual basis by stating that the damage Crowne suffered was caused by deterioration and that, in Crowley's opinion, the damage was not covered by Crowne's insurance policy. This defense, if proven, would act as a complete bar to Crowne's breach-of-contract claim against Royal. Thus, Royal has satisfied this Court's "threshold prerequisite" of asserting a meritorious defense.
NOTES
[1] As discussed later in this opinion, the complaint stated that the date of this letter was November 6, 2001. However, the November 6 date was apparently a typographical error in the complaint.
[2] It is not known if these exhibits were actually attached to the service copy of the complaint; they are not attached to the original of the complaint contained in the record.
[3] Technically, Crowne objected that the policy, as well as the other documents, was not substantiated and that a foundation was not properly laid for the admission of the documents. The trial court's order, however, viewed the objection as Crowne's "considering the documents as not being properly authenticated," and Crowne states in its appellate brief that it "objected to the documents['] being offered without being first properly authenticated." Although Crowne also argues on appeal that the VAIL report constitutes hearsay, this argument was not made at the hearing; thus, it is waived.