THOMAS, Judge.
On December 20, 2003, Darius Moore was injured when the paint thinner he was using to prepare a piece of machinery for painting was ignited by sparks from a metal grinder being used overhead by Larry Welch. When Welch heard Moore scream, he ran to Moore’s aid, attempting first to pat out the flames with his hands, which were encased in work gloves. When the work gloves caught fire and it was apparent that a different approach to putting out the flames was necessary, Welch retrieved a nearby fire extinguisher and attempted to use it by removing its pin and depressing its lever. The fire extinguisher did not discharge. Welch then retrieved a second fire extinguisher, which also failed to discharge. Moore ran outside, and Welch and others kicked wet sand on him as he rolled in the sand to extinguish the flames. Moore was taken to the emergency room by ambulance; he suffered third-degree full-thickness burns to 25 percent of his body.
Moore sued Staffing Concepts, Inc., PSI Sales, Inc., Garrett’s Fire Equipment, Wiley Garrett, and various fictitiously named parties, asserting, among other things, a *188 workers’ compensation claim, negligence claims, and wantonness claims.[1] In August 2006, Moore substituted his co-employees at the time of the accident, Larry Welch, Frank James, and Sid Sewell (sometimes collectively referred to as “the co-employees”) for certain fictitiously named parties in the original complaint. He asserted against those co-employees claims under Ala.Code 1975, § 25-5-11(c)(1) and (c)(2).
Pursuant to Ala.Code 1975, § 25-5-11(b), in certain limited instances involving willful conduct, an injured employee may bring a cause of action against co-employees who the employee alleges caused his or her injury. Section 25-5-ll(c) defines “willful conduct” for purposes of the section. In pertinent part, § 25-5-ll(c) reads:
“(c) As used herein, ‘willful conduct’ means any of the following:
“(1) A purpose or intent or design to injure another; and if a person, with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he or she is guilty of ‘willful conduct.’
“(2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal; provided, however, that removal of a guard or device shall not be willful conduct unless the removal did, in fact, increase the danger in the use of the machine and was not done for the purpose of repair of the machine or was not part of an improvement or modification of the machine which rendered the safety device unnecessary or ineffective.”
Specifically, Moore asserted that the co-employees were liable to him under § 25-5 — 11(c)(1) because, he asserted, they had “fail[ed] to properly inspect, maintain, and refill fire extinguishers and engag[ed] in other conduct which was certain to result in serious injury to [Moore].” Moore’s § 25-5-ll(c)(2) claim was based on allegations that the co-employees had “wilfully and intentionally remov[ed] a safety device or safety guard from the fire extinguisher” by “discharging the extinguisher, by failing to inspect the extinguisher, by failing to refill the extinguisher, and by engaging in other conduct which was certain to result in injury to [Moore].”
The co-employees failed to answer the complaint and failed to appear at the February 12, 2007, trial setting. Moore presented evidence at the trial. On February 22, 2007, the trial court entered a default judgment against the co-employees, in which it concluded:
“Although there is no evidence in the present case that the [co-employees] set out to intentionally injure [Moore], there is ample evidence to support the fact that the [co-employees] did not properly maintain and/or repair the fire extinguishers which are important safety devices .... Therefore, ... this court hereby finds in favor of [Moore] on his claim under Alabama Code § 25-5-ll(c)(2).”
*189 The co-employees moved, pursuant to Rule 55(c), Ala. R. Civ. P., to set aside the default judgment on March 1, 2007. In their Rule 55(c) motion, the co-employees argued that Moore’s attorney had agreed with Edward Bowron, the attorney for PSI Sales, that no response from the co-employees was necessary until such time as the insurance company for PSI Sales determined whether the co-employees would be covered under PSI Sales’ insurance policy. In addition, the co-employees pointed out that the scheduling order setting the case for trial on the claims against the co-employees was entered before the complaint naming the specific co-employees was amended and that the scheduling order was never served on the co-employees. Finally, the co-employees asserted that the clerk’s office did not send notices of the trial date to the co-employees. Thus, the co-employees argued, their conduct in failing to answer and in failing to attend a trial they were unaware had been scheduled was not culpable. The co-employees also argued that they had a meritorious defense because, they asserted, actions against co-employees are disfavored in the law and the evidence already in the record and the evidence submitted in support of their Rule 55(c) motion indicated that the co-employees had not engaged in conduct that would amount to willful conduct under § 25-5-ll(e)(l) and that they had not removed a safety device from a machine as is required for the application of § 25-5-11(c)(2). Finally, the co-employees argued that, other than having the judgment set aside and having to proceed to a trial, Moore would suffer no prejudice if the default judgment were set aside.
After a hearing at which both sides argued their position on the Rule 55(c) motion, the trial court set aside the default judgment on May 24, 2007. The co-employees then answered the complaint and, in November 2007, moved for a summary judgment on Moore’s claims against them; the co-employees amended their motion on January 8, 2008. Ultimately, the trial court granted the co-employees’ summary-judgment motion.[2] Moore timely appealed to the Alabama Supreme Court, which transferred the case to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
On appeal, Moore argues first that the trial court erred in setting aside the default judgment in his favor. Moore contends that the co-employees failed to establish a meritorious defense, that they failed to establish a lack of prejudice to him, and that they failed to establish that their conduct in failing to answer or to appear for trial was not culpable. See Kirtland v. Fort Morgan Auth. Sewer Serv., Inc., 524 So.2d 600 (Ala.1988) (setting out the analysis to be employed by a trial court when considering a Rule 55(c) motion). Moore also attacks the propriety of the summary judgment in favor of the co-employees.

I. The Propriety of Setting Aside the Default Judgment

We will first examine the propriety of the trial court’s decision to grant the co- *190 employees’ motion to set aside the default judgment. Moore argues that, under the analysis employed by our supreme court in Kirtland, the trial court erred when it set aside the default judgment. As our supreme court explained in Kirtland, a trial court considering whether to set aside a default judgment must consider: “1) whether the defendant has a meritorious defense; 2) whether the plaintiff will be unfairly prejudiced if the default judgment is set aside; and 3) whether the default judgment was a result of the defendant’s own culpable conduct.” Kirtland, 524 So.2d at 605. As a reviewing court, we must consider whether the trial court’s decision to set aside the default judgment constituted an abuse of its discretion. Kirtland, 524 So.2d at 603. We are also mindful that our supreme court has stressed that a trial court should begin its analysis under Rule 55(c) with “the presumption that cases should be decided on the merits whenever practicable” and that “the trial court’s use of its discretionary authority should be resolved in favor of the defaulting party where there is doubt as to the propriety of the default judgment.” Id. at 604.

A. Whether the Co-employees Established a Meritorious Defense

Moore complains that the co-employees failed to demonstrate a meritorious defense to the claims against them in their motion to set aside the default judgment. As Moore correctly states, it was the co-employees’ burden to meet the threshold requirement of demonstrating the existence of a meritorious defense. Kirtland, 524 So.2d at 605. The meritorious-defense factor requires that a defendant establish that he or she has a plausible defense to the action in order to “[strike] a balance between the countervailing interests of the judiciary’s need to enforce the rules of court and a litigant’s right to defend on the merits.” Kirtland, 524 So.2d at 606.
To establish a meritorious defense, a defendant “must set forth with sufficient particularity a plausible defense.” Jones v. Hydro-Wave of Alabama, Inc., 524 So.2d 610, 613 (1988). “Merely stating that one has a meritorious defense is simply not enough.” Phillips v. Randolph, 828 So.2d 269, 274 (Ala.2002). As the Kirtland court stated:
“[T]he allegations set forth in the answer and in the motion must be more than mere bare legal conclusions without factual support; they must counter the cause of action averred in the complaint with specificity — namely, by setting forth relevant legal grounds substantiated by a credible factual basis. Such allegations would constitute a ‘plausible defense.’ ”
Kirtland, 524 So.2d at 606. The Kirtland court further explained:
“The defense proffered by the defaulting party must be of such merit as to induce the trial court reasonably to infer that allowing the defense to be litigated could foreseeably alter the outcome of the case. To be more precise, a defaulting party has satisfactorily made a showing of a meritorious defense when allegations in an answer or in a motion to set aside a default judgment and its supporting affidavits, if proven at trial, would constitute a complete defense to the action, or when sufficient evidence has been adduced either by way of affidavit or by some other means to warrant submission of the case to the jury.”

Id.

In their motion to set aside the default judgment, the co-employees argued that Moore’s allegations that the co-employees were liable to him because of their allegedly improper maintenance of the fire extin *191 guishers could not be a basis for recovery under § 25 — 5—11(c)(2) because the fire extinguishers were safety devices in the workplace and not safety devices on a machine. The co-employees grounded their legal argument on two Alabama Supreme Court cases, Namislo v. Alezo Chemical Co., 671 So.2d 1380, 1386-87 (Ala.1995), and Mallisham, v. Kiker, 630 So.2d 420, 424 (Ala.1993), which both affirmed summary judgments in favor of co-employees on the ground that the alleged failure to properly maintain a scrubber system and the alleged failure to properly match a respirator and filter in Namislo and the alleged failure to properly place support timbers in Mallisham were not sufficient allegations to give rise to a § 2 5 — 5—11(c) (2) claim in large part because the alleged safety devices were not part of a machine but were instead safety devices supplied in the workplace environment.
The co-employees also presented a second legal ai'gument as a meritorious defense. They argued that, even if the failure to properly maintain the fire extinguishers were a basis for liability under § 25 — 5—11(c)(2), the co-employees were unaware of both the need for maintenance of the fire extinguishers and the type of maintenance required. The co-employees provided some factual support for this argument, including deposition testimony and affidavits indicating that the co-employees were not aware that the fire extinguishers were to be regularly inspected and denying that any one of them was responsible for conducting such an inspection. Them lack of awareness of the need for maintenance or inspection, argued the co-employees, would result in a judgment in their favor because § 25 — 5—11(c) (2) requires that the removal of a safety device be “willful and intentional” and not merely negligent or even wanton. See King v. Cape, 907 So.2d 1066, 1074-75 (Ala.Civ.App.2005) (“The legislature’s use of the words ‘willful and intentional’ before the word ‘removal’ in § 25-5-11(c)(2) was purposeful.” “To allow co-employee liability to be premised on § 25-5-ll(c)(2) when a co-employee had neither notice that the safety device was not working properly nor notice that the safety device required a specific type of maintenance to ensure that it would work properly more closely resembles a suit based on that co-employee’s negligence rather than his or her willful and intentional conduct.”).
As the trial court noted at the hearing on the co-employees’ motion to set aside the default judgment, the trial court found the argument that the allegedly improper maintenance of fire extinguishers would not establish a violation of § 25-5-11(c)(2) because the fire extinguishers were not machines and were instead safety devices in the workplace to be worthy of consideration. Our review of the pertinent case-law, which will be discussed further infra, supports the trial court’s conclusion that the co-employees presented a meritorious defense in their motion to set aside the default judgment.
We note that the co-employees did not present a specific argument concerning the § 25 — 5—11(c)(1) claim asserted in Moore’s complaint. However, the trial court specifically found in its default judgment, after considering the evidence Moore had presented at the trial, that the evidence established a claim under only § 25-5-11(c)(2). Liability under § 25 — 5—11(c)(1) hinges on the willfulness of the co-employee’s conduct and requires not only a showing that the co-employee has “ ‘knowledge and an appreciation of the risk of injury or death,’ ” Ex parte Martin, 733 So.2d 392, 895 (Ala.1999) (quoting Layne v. Carr) 631 So.2d 978, 982 (Ala.1994)), but also a showing that the co-employee “was substantially certain that the accident would follow *192 from his actions.” Ex parte Martin, 733 So.2d at 396. In light of the evidence indicating that none of the co-employees knew that the fee extinguishers required regular maintenance and the evidence indicating that Welch did not know that Moore was working beneath him at the time of the accident, we conclude that the co-employees presented evidence of a meritorious defense on the § 25 — 5—11 (c)(1) claim as well.

B. Whether the Co-employees Demonstrated that the Default Judgment Was Not the Result of Their Oimi Culpable Conduct

When considering whether to set aside a default judgment, a trial court must also consider whether the party against whom the default judgment was entered has committed culpable conduct warranting the denial of the Rule 55(c) motion. Kirtland, 524 So.2d at 607-08. Mere negligence in the conduct of one’s legal affairs is not considered culpable conduct. Instead, culpable conduct is “[c]on-cluct committed willfully or in bad faith,” id. at 607, which the Kirtland court described as being “characterized by incessant and flagrant disrespect for court rules, deliberate and knowing disregard for judicial authority, or intentional nonre-sponsiveness.” Id. at 608. Utter disregard for court rules and judicial authority, said the Kirtland court, “justifies a finding of culpability and thus militates against an exercise of discretion in favor of the defaulting party.” Id. However, if a party has a “reasonable explanation for inaction,” like a negligent failure to timely respond to a complaint or a lack of ability to understand the summons and complaint, the trial court may well find that the party’s conduct was not culpable. Id.
The co-employees argued in their Rule 55(c) motion that their failure to answer the complaint and their failure to appear for trial was not culpable conduct under the circumstances. The co-employees argued that they had never received notice of the trial setting because the date had been set before the date on which Moore amended his complaint to add the co-employees as defendants. In addition, according to the co-employees, they had relied on a statement made by Moore’s attorney to the effect that the co-employees need not file an answer to the amended complaint until the issue of insurance coverage was resolved.
The co-employees presented evidence indicating that Moore’s attorney had discussed the claims asserted against the co-employees with Edward Bowron, the attorney for PSI Sales. According to Bow-ron’s affidavit, which was submitted in support of the Rule 55(c) motion, Bowron requested that Moore’s attorney “not take any adverse action against” the co-employees without first notifying Bowron of the intent to do so. Bowron stated in his affidavit that he had sent a letter to Moore’s attorney reiterating the substance of an agreement that no action need be taken on the part of the co-employees until a coverage issue with PSI Sales’ insurer was resolved. Bowron’s letter was also attached to the motion to set aside the default judgment; the pertinent sentence in the letter reads: “Pursuant to our recent conversation, this letter is to confirm that a responsive pleading/Answer is not required on behalf of [the co-employees] until after the carrier makes [its] decision regarding the defense.”
At the hearing on the motion to set aside the default judgment, the trial court questioned whether the clerk was required to send out the notices for trial. The trial court appeared to find persuasive the claim that the co-employees were not notified of the trial setting. In addition, a reading of the transcript of the hearing *193 makes it clear that the trial court based its determination that the co-employees’ conduct was not culpable in large part on the miscommunication between Moore’s attorney and Bowron regarding the lack of necessity for action on the part of the co-employees.
Moore argues that the trial court improperly relied on the practice among local attorneys in which the plaintiffs attorney permits a defendant additional time to answer the complaint via a “gentleman’s agreement” often memorialized in a letter. According to Moore, Bowron’s letter did not indicate that the co-employees were not required to answer but instead indicated that Bowron would not be filing answers on them behalf because he was not representing them. The trial court resolved this conflict in favor of the co-employees, stating on the record that the sentence at issue seemed clear.
Moore’s reliance on Maddox v. Hunt, 281 Ala. 335, 202 So.2d 543 (1967), is misplaced. Although that case does hold that a custom of the local bar to notify opposing counsel before taking a default judgment could not be considered by the trial court in determining whether to set aside a default judgment because the custom conflicted with a statute prohibiting such agreements unless they were in writing and signed by the party to be bound, Maddox, 281 Ala. at 342-43, 202 So.2d at 549, the case predates the adoption of the Rules of Civil Procedure and the development of the Kirtland factors. In fact, this court has reversed a trial court’s denial of a Rule 55(c) motion based on the lack of culpable conduct of the defaulting party as evidenced by his reliance on his communication with the attorney for the plaintiffs indicating that the lawsuit might be dismissed if certain conditions were met and indicating that notice of filing for a default judgment would be given before such action was taken. See Martin v. Crumpton, 883 So.2d 700, 702 (Ala.Civ.App.2003). We do not find Maddox to be binding authority requiring us to hold that the trial court abused its discretion in determining whether the co-employees’ failure to timely respond to the complaint was culpable conduct under the Kirtland analysis. We conclude, therefore, that the record contains ample evidence from which the trial court could have concluded that the co-employees’ failure to timely answer the complaint and their failure to appear for trial did not constitute culpable conduct.

C. Whether the Co-employees Established that Moore Would Not Be Prejudiced by Setting Aside the Default Judgment

 Our supreme court has held that the prejudice befalling a plaintiff must be substantial in order to warrant the denial of a motion to set aside a default judgment. Kirtland, 524 So.2d at 607. Mere delay or increased costs of litigation are not considered substantial prejudice, largely because those types of inconveniences may be allayed by the imposition of costs if the plaintiff prevails on the merits. Royal Ins. Co. of America v. Crowne Invs., Inc., 903 So.2d 802, 811 (Ala.2004). Instead, our supreme court has focused on whether the setting aside of the default judgment will “facilitatfe] fraud or collusion, result[ ] in the loss of evidence, or hinder[ ] discovery.” Royal Ins., 903 So.2d at 811. However, as Moore points out, our supreme court has placed the initial burden of demonstrating that no prejudice would befall the plaintiff if the default judgment were set aside on the defendant. Id. (citing Phillips v. Randolph, 828 So.2d 269, 278 (Ala.2002)). A mere statement to the effect that no prejudice will befall the plaintiff is insufficient to meet the defendant’s burden; some factual showing is required. Id. The task of determining if the preju *194 dice would be substantial, however, falls to the trial judge, who may review the facts and consider the parties’ arguments in making the determination. Kirtland, 524 So.2d at 607.
The co-employees asserted in them motion to set aside the default judgment that Moore would suffer no prejudice because the case had moved quickly, taking only about four months to journey from the filing of the amended complaint to the entry of the default judgment in Moore’s favor. During that time, said the co-employees, Mooi-e did not engage in any discovery. The co-employees also asserted that the sizeable default judgment was based in large part on Moore’s complaints of lost wages and asserted permanent disability, which, according to the co-employees, appeared somewhat inflated in light of the rather meager $65,000 settlement of his workers’ compensation claim.
Moore argues that the co-employees’ argument on the prejudice factor is merely that — an argument. He complains that the assertion that no prejudice would befall him if the default judgment is set aside is a conclusory statement in the Rule 55(c) motion and that no facts support the co-employees’ assertion. Thus, according to Moore, the trial court abused its discretion by setting aside the default judgment.
In addition, Moore asserts that he has been prejudiced by the loss of evidence in this case, namely, the fire extinguishers that failed to work on the day of the accident. However, we fail to see how those fire extinguishers, which everyone agrees were not properly maintained, failed to discharge, and had broken or missing parts, are necessary evidence in this particular case. The co-employees admit that the fire extinguishers were not inspected monthly. The co-employees have all stated that they were unaware of the need for regular inspections and possible maintenance of the fire extinguishers. What an inspection of the fire extinguishers would provide Moore is not clear from the record. Moore provided as an exhibit on more than one occasion a copy of the tags from the two fire extinguishers that failed to work on the day of the accident; Garrett provided an affidavit testifying to the condition of the two fire extinguishers when he came to inspect them two days after the accident; and Moore’s expert used the tags and the affidavit testimony provided by Garrett and another person who worked at PSI Sales during the relevant period to provide testimony concerning the failure to maintain, inspect, and repair the fire extinguishers. Thus, we cannot agree with Moore’s assertion that the loss of the fire extinguishers amounted to substantial prejudice requiring a reversal of the trial court’s decision to grant the co-employees’ motion to set aside the default judgment.
We return now to the initial argument— whether the co-employees met their burden of demonstrating a lack of prejudice to Moore. Although the co-employees did not present via affidavit or deposition facts that would establish the lack of prejudice to Moore, we cannot see how they could have presented such evidence. See Sumlin v. Sumlin, 931 So.2d 40, 48 (Ala.Civ.App.2005) (explaining that placing “the burden of demonstrating the lack of prejudice to the nonmovant on the movant may be problematic in two ways: (1) its asks the movant to prove a negative, and (2) whether or not the nonmovant has been prejudiced in some manner, such as by the death or other unavailability of a witness, is information more commonly within the knowledge of the nonmovant”). There have been no allegations of fraud or collusion on the part of the co-employees nor allegations that discovery was or would be hindered. As noted above, Moore has as *195 serted that the loss of the fire extinguishers caused him prejudice; we fail to see any prejudice resulting from the missing fire extinguishers. We must determine, then, whether the failure to adequately present a factual basis for the conclusion that no substantial prejudice would befall Moore merits the reversal of the trial court’s decision to grant the Rule 55(c) motion.
We note that the Kirtland factors were established as an aid to the trial courts in “balancing the equities” of the parties when considering motions to set aside default judgments. Kirtland, 524 So.2d at 608. A trial court is to presume that the case should be decided on the merits, consider the Kirtland factors, and then determine, based on its view of the evidence and its opinion regarding the good faith and credibility of the parties, whether to exercise its discretion in favor of the defaulting party by setting aside the default judgment. Id. Both this court and the supreme court have indicated that the failure to satisfy the second or third Kirtland prong, or even both, may not be sufficient to warrant the denial of a motion to set aside the default judgment. Rooney v. Southern Dependacare, Inc., 672 So.2d 1, 7 (Ala.1995); Fries Correctional Equip., Inc. v. Con-Tech, Inc., 559 So.2d 557, 562-68 (Ala.1990); and Aldridge v. Hamilton, 708 So.2d 194, 196 (Ala.Civ.App.1997).
In Fries Correctional Equipment, our supreme court reversed the denial of a Rule 55(c) motion, stating that the finding of culpable conduct on the part of the defaulting party, Fries, which was supported by the evidence of record, was not adequate reason for the denial of a Rule 55(c) motion. Fries Correctional Equip., 559 So.2d at 562. The court explained that the trial court’s conclusion that Fries’s conduct was culpable because it “had intentionally flouted the judicial process”
“do[es] not support the refusal to set aside the default judgment against Fries, however, because the claims were so much in dispute, as explained above, and because of the size of the judgment. The evidence given at the hearing on damages was largely speculative, consisting primarily of worst-case scenarios as to additional expenses that Con-Tech might incur in completing contracts and in potential warranty liability. Even those figures do not appear to support an award of $1,000,000 in damages. Thus, both liability and damages are open to substantial dispute. In such a circumstance, a defendant’s avoidance of service might be grounds for imposition of costs or other sanctions, but should not be grounds for a refusal to set aside such a large default judgment.”
Id. at 562-63.
Certainly, the co-employees could have better presented them argument that Moore would not suffer substantial prejudice if the default judgment were set aside. However, the co-employees established a meritorious defense and established a lack of culpable conduct on their part. Balancing the equities as Kirtland requires, the trial court concluded that it should exercise its discretion in favor of setting aside the default judgment under the circumstances. This exercise of discretion on the part of the trial court seems particularly sound in a situation in which the defense appears to have clear legal merit, the defaulting parties were not guilty of culpable conduct, and the default judgment itself is substantial in amount. See Fries Correctional Equip., 559 So.2d at 562-63. We cannot conclude, as Moore would have us do, that the less-than-perfect submission by the co-employees on the lack-of-prejudice factor militates in favor of reversing the trial court’s decision to set aside the default judgment.

*196
D. Conclusion

The co-employees established in their Rule 55(c) motion and the submissions in support of that motion that they had a meritorious defense to Moore’s claims against them. The trial court determined that the co-employees’ failure to answer the complaint and their failure to attend the trial was not, under the circumstances, culpable conduct. Although the co-employees failed to present evidence in support of their claim that Moore would not be prejudiced by having the default judgment set aside, we have concluded that such failure does not require reversal of the trial court’s decision to set aside the default judgment in this case. Accordingly, we affirm the trial court’s order setting aside the default judgment.

II. The Merits of the Summary Judgment in Favor of the Co-employees

We now turn to a consideration of the propriety of the summary judgment entered in favor of the co-employees on Moore’s § 25 — 5—11 (c)(1) and (c)(2) claims against them. With regard to his 25-5-11(c)(1) claim, Moore challenges only the summary judgment in Welch’s favor; thus, we affirm the summary judgment to the extent it enters a judgment in favor of Sewell and James on Moore’s § 25-5-11(c)(1) claim. Tucker v. Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319 (Ala.2003) (stating general principle that the failure to present and argue an issue in an appellant’s brief amounts to a waiver of that issue on appeal). As noted above, § 25-5-ll(b) permits an injured employee to sue his or her co-employees in limited situations involving willful conduct, as defined in 25-5-11(c). Actions under § 25-5 — 11(c)(1) require a showing that the co-employee intended to injure someone or a showing that the co-employee was substantially certain that injury or death would result from his or her action or inaction. See, generally, Warren v. Wester, 827 So.2d 116, 119 (Ala.Civ.App.2002). In order to recover under § 25-5-ll(c)(2), an injured employee must show that a co-employee removed, failed to install, failed to maintain or repair, or bypassed a safety device on a machine. See King v. Cape, 907 So.2d at 1072 (explaining that the term “removal” used in § 25-5-ll(c)(2) has been expanded to include the failure to install, the failure to maintain or repair, and the bypassing of a safety device).
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a jury would be entitled to draw. See Nationwide Prop. & Cas. Ins. Co. v. DPF *197 Architects, P.C., 792 So.2d 369, 372 (Ala.2000); and Fuqua v. Ingersoll-Rand Co., 591 So.2d 486, 487 (Ala.1991).

A. Whether Moore Presented Substantial Evidence Indicating That Welch Committed Willful Conduct Under § 25-5-ll(c)(l)

In order to defeat the motion for a summary judgment, Moore was required to present evidence showing “either 1) the reason why [Welch] would want to intentionally injure [Moore], or someone else, or 2) that a reasonable man in [Welch’s] position ... would have known that a particular result (i.e., injury or death) was substantially certain to follow from his actions.” Reed v. Brunson, 527 So.2d 102, 120 (Ala.1988). Moore does not contend that Welch had as his purpose to injure Moore or another employee. He does contend, however, that Welch reasonably should have known that Moore’s injury was substantially certain to follow from Welch’s actions in operating a grinder over the area in which Moore was using paint thinner.
Welch himself denied knowing that Moore was actually underneath the area in which Welch was using the grinder. Although Welch admitted that he had instructed Moore to get the paint thinner to wipe down the piece of equipment that they were preparing to paint, Welch said that he had not expected Moore to actually use the paint thinner while Welch was still operating the grinder. Welch indicated that he expected that Moore would remain outside until Welch finished grinding and that he thought that Moore was still collecting the paint thinner as he continued to grind. According to Welch, the shop rules prohibited having an open flame within 50 feet of the 55-gallon drums containing the paint thinner or any open container of paint thinner. James testified that he did not think that Welch knew that Moore was beneath him and stated that grinding near paint thinner would be a “stupid thing to do.”
Christopher Moore, Darius Moore’s brother, submitted an affidavit in support of Moore’s response to the motion for a summary judgment. According to Christopher Moore, Welch came to the hospital to see Moore after the accident. In the affidavit, Christopher Moore stated that Welch had said that he felt responsible for the accident. Christopher Moore went on to state that Welch had said that he should not have been grinding around paint thinner. In the affidavit, Christopher Moore testified that Welch had made a statement closely resembling the following: “I don’t know why I started that grinder back up— I should have known better.”
Thus, we must determine if the evidence discussed above, considered in the light most favorable to Moore, the nonmovant, see Nationwide Prop. & Cas. Ins. Co., 792 So.2d at 372, is substantial evidence creating a genuine issue of material fact concerning whether Welch was substantially certain that injury would follow from his actions. The substantial-certainty standard has been described as “an exacting one.” Ex parte Newton, 895 So.2d 851, 855 (Ala.2004). In fact, in Reed, our supreme court noted that, in enacting § 25-5—11(c)(1),
“the Legislature intended for an injured plaintiff to prove more than simply that he was compelled to work under circumstances that posed a foreseeable risk of harm to him or others (or circumstances from which harm could likely or even probably result), in order to maintain his action based on the ‘willfulness’ of a co-employee defendant.... (A purpose, intent, or design to injure another was not intended to be reasonably inferable from evidence showing only knowledge and appreciation of a risk of injury or death *198 short of substantial certainty that injury or death would occur.) We think it safe to say that negligent, or even wanton, conduct is much more prevalent in the work place than conduct actually intended to cause injury or death. We think the Legislature has recognized this also, and, in so doing, has placed upon an injured worker a heavier burden in proving a purpose, intent, or design to injure on the part of a co-worker. This comports'with the manifest intent of the Legislature that litigation among co-employees be restricted to those situations in which the plaintiff can show something more than what is usually sufficient to make out a case of negligence or wantonness. There is no evidence in this case tending to show that any of the defendants had a reason to injure the plaintiff, or anyone else; nor is there any evidence tending to show that the plaintiffs injury was substantially certain to follow from the actions of the defendants.”
Reed, 527 So.2d at 120-21. Our supreme court has further explained that, in addition to showing “that the coemployee defendant was substantially certain that, if the accident occurred, injury or death would result,” an injured employee must also present evidence indicating that “the coemployee defendant was substantially certain that the accident would follow from his actions.” Ex parte Martin, 733 So.2d at 396 (emphasis added).
A consideration of the evidence recited above leads to the conclusion that Welch knew that the use of a grinder near an open can of paint thinner could possibly result in a fire like the one that injured Moore. However, we are not as convinced that the evidence supports a conclusion that Welch, at the time of the accident, knew that the accident that did occur was substantially certain to follow from his actions. Although Welch was clearly aware that he should not operate a grinder near an open can of paint thinner*, and although he sent Moore to get the paint thinner as part of the preparation of the piece of machinery for painting, the evidence does not establish that Welch knew, at the time of the accident, that Moore was using the joaint thinner beneath him.
Welch’s purported statements indicating that he felt responsible and that he “knew better” than to start up the grinder do not indicate that Welch knew that Moore was beneath him at the time he started the grinder. In fact, in his deposition testimony, Welch indicated that he thought that Moore was still getting the paint thinner and that he would have expected Moore to wait until Welch finished grinding to return to the area with the paint thinner. Although Welch might have been negligent or perhaps even wanton by instructing Moore to get the paint thinner while he was still using the grinder without clearly instructing Moore to remain out of the area until the grinding was complete or by continuing to use the grinder without checking to see if Moore had returned with the paint thinner, evidence of negligence or wantonness is insufficient proof for an action under § 25 — 5—11(c)(1). Thus, we cannot agree with Moore that he presented substantial evidence indicating that Welch committed willful conduct under § 25 — 5—11(c)(1), and we affirm the summary judgment insofar as it relates to Moore’s § 25 — 5—11(c)(1) claim against Welch.

B. Whether Moore Presented Substantial Evidence Indicating That the Co-employees Committed Willful Conduct Under § 25-5-ll(c)(2) by Failing to Maintain the Shop Fire Extinguishers

In addition to asserting a § 25-5-11(c)(1) claim against Welch, Moore assert *199 ed a § 25 — 5—11(c) (2) claim against all three of his supervisory co-employees: Welch, James, and Sewell. Moore’s argument is based upon the failure of the two shop fire extinguishers Welch attempted to use to put out the fire. According to Moore, Welch, James, and Sewell each had as part of their duties maintaining safety in the plant and, he asserts, maintaining the fire extinguishers was a part of that duty. Because the fire extinguishers admittedly failed to discharge, because the evidence established that the fire extinguishers had damaged gauges, lacked safety ties, and had been at least partially discharged, and because he argues that the gauges and safety ties are safety devices on the fire extinguishers, Moore contends that Welch, James, and Sewell failed to maintain those safety devices, thus making them liable under § 25-5-ll(c)(2).
The co-employees make several arguments in support of the trial court’s summary judgment, including an argument that an injured employee must be injured by the very machine from which he contends the safety device in question was removed. A consideration of the co-employees’ overarching argument and our review of the cases interpreting § 25-5-11(c)(2), however, yields a simpler basis for affirming the summary judgment.
Although the language of § 25-5-11(c)(2) indicates that the removal of a safety device from a machine is required in order for a co-employee to face liability for an injured employee’s injury, our supreme court has expanded the meaning of the term “removal” to include the failure to install a safety device, see Bailey v. Hogg, 547 So.2d 498 (Ala.1989), bypassing a safety device, see Harris v. Gill, 585 So.2d 831 (Ala.1991), and the failure to maintain or repair a safety device, see Moore v. Reeves, 589 So.2d 173 (Ala.1991). Our supreme court, however, has not expanded the scope of § 25-5-ll(c)(2) to include the failure to provide safety equipment in general in order to provide a safe working environment. In fact, the supreme court has made it clear that “[t]he legislature has retained a limited right of action against a co-employee under § 25-5-ll(c)(2) for the removal of a manufacturer’s safety device from a machine, not the removal or omission of any safety device from any workplace environment.” Mallisham v. Kilcer, 630 So.2d at 423-24 (footnote omitted).
In Mallisham, the court considered whether the support timbers used on mine walls were safety devices on a machine as required under the language of the statute. Mallisham, 630 So.2d at 423. The trial court had concluded that the mine was not a machine, and the supreme court affirmed the summary judgment in favor of the defendant co-employees on that ground. Id. at 423-24. Using the same principle quoted above — that the statute requires the removal of the safety device in question from a machine and not simply the removal or omission of any safety device used within the workplace — the supreme court also affirmed a summary judgment for the defendant co-employees who had failed to repair a water pump that was to keep a mine free of water because the mine was not a machine from which a safety device had been removed. Layne v. Carr, 631 So.2d at 983. Mallisham and Layne are somewhat distinguishable from the present case in light of the fact that both concerned mine safety and we are instead concerned with safety at a manufacturing or fabrication plant.
However, our supreme court has used the same principle in cases unrelated to mine safety. See Namislo v. Alezo Chem. Co., 671 So.2d at 1387; Lane v. Georgia Cas. & Surety Co., 670 So.2d 889, 892 (Ala.1995). In Namislo, the court considered whether a scrubber system and ex *200 haust fans in a cell house in which chlorine gas was produced and the respirator provided to the injured employee with a mismatched filter were safety devices under § 25 — 5—11(c)(2). Namislo, 671 So.2d at 1387. The court concluded that the scrubber system and the exhaust fans were part of the system used to produce chlorine gas and were not safety devices. Id. More pertinent to the present case, however, is the supreme court’s conclusion that the respirator with a mismatched filter was not a safety device under § 25-5-ll(c)(2). Id. According to the court, the respirator was a device to be used to increase safety in the workplace, nothing had been removed from it by any of the co-employees, and it did “not fall within the purview of § 25-5-ll(c)(2).” Id. Before stating its conclusion, the court emphasized that, to be actionable, a § 25 — 5—11(c)(2) claim must involve the removal of a safety device from a machine and not just “ ‘the removal or omission of any safety device from any workplace environment.’ ” Id. (quoting Mallisham, 630 So.2d at 423-24) (emphasis omitted).
Although Moore, unlike the injured employee in Namislo, contends that the co-employees “removed” certain safety devices from the fire extinguishers by failing to inspect and maintain the fire extinguishers, we do not find the factual distinction sufficient to exclude the fire extinguishers from the rule espoused in Mallisham that the omission or removal of any safety device that might be provided in a workplace is not actionable under § 25 — 5—11(c)(2). In Lane, the plaintiff argued that he was not provided the proper safety device — a pair of safety glasses — by his co-employees. Lane, 670 So.2d at 892. The supreme court affirmed the summary judgment for the co-employees, noting that it had “consistently rejected attempts to bring actions against co-employees outside of the limited context of safety devices manufactured for machines” and reiterating that “§ 25 — 5—11 (c)(2) cannot be construed to allow a co-employee action in every situation where an employee is injured on the job.” Id.
The fire extinguishers that Moore claims the co-employees failed to maintain were not a part of a machine in the workplace. Instead, those fire extinguishers were themselves safety devices that were provided in the workplace to help reduce the risk of injury and death resulting from fire. Like the support timbers in Mallis-ham, the water pump in Layne, the respirator in Namislo, and the safety glasses in Lane, the fire extinguishers are not within the purview of § 25-5-11(c) (2).
Because we have concluded that the fire extinguishers were not safety devices on a machine and were instead safety devices used within the workplace, Moore cannot maintain an action against his co-employees under § 25-5-ll(c)(2) based on the alleged failure of the co-employees to properly maintain the fire extinguishers. We therefore omit discussion of the other arguments raised by Moore on appeal and raised by the co-employees in support of the summary judgment in their favor. The summary judgment was properly entered, and we affirm that judgment.

III. Conclusion

After a review of the Kirtland factors, two of which solidly supported the trial court’s exercise of discretion in favor of setting aside the default judgment, we have concluded that the trial court’s oi'der setting aside the default judgment should be affirmed. Our review of the summary judgment on Moore’s § 25-5-ll(c)(l) claim yields the conclusion that Moore failed to present substantial evidence indicating that Welch knew that his actions on the day of the accident were substantially certain to result in the accident that injured *201 Moore. Likewise, we have concluded that Moore failed to present substantial evidence indicating that his co-employees removed, or failed to maintain, a safety device on a machine and instead presented evidence indicating that they had failed to properly maintain a safety device in the workplace, which is not a basis for co-employee liability under § 25 — 5—11(c)(2). We therefore affirm the trial court’s summary judgment for the co-employees in its entirety.
AFFIRMED.
PITTMAN and MOORE, JJ., concur.
BRYAN, J., concurs specially, with writing, which THOMPSON, P.J., joins.

. PSI Sales sought and received a summary judgment in its favor on the claims asserted against it in August 2006. Moore’s workers’ compensation claim against Staffing Concepts was resolved by settlement in January 2007. Moore's claims against Garrett and Garrett's Fire Equipment were resolved by a joint stipulation of dismissal, which was filed in the trial court on April 12, 2007. Thus, the claims asserted against these defendants are not relevant to this appeal.

. The trial court actually granted the co-employees' summary-judgment motion on January 9, 2008, but it set aside that judgment later on that same day. The trial court then set the motion for a hearing to be held on February 1, 2008; it never held that hearing, however, because it granted the motion again on January 25, 2008. On January 30, 2008, two days before the date set for the hearing, Moore filed a response to the amended summary-judgment motion. Moore does not argue that the summary judgment is due to be reversed on the procedural irregularity in the summary-judgment practice, i.e., the fact that the trial court granted the summary-judgment motion before holding the hearing and before Moore timely responded to the amended motion under Rule 56(c)(2), Ala. R. Civ. P. (requiring that evidence in opposition to the motion be served at least two days before the hearing).